**Annie Bell SLOAN, Individually, and as Executrix of the Estate of Moses C. Sloan, Deceased, et al., Appellants,**

**v.**

**ATLANTIC RICHFIELD COMPANY, Appellee.**

**No. 2047.**

Supreme Court of Alaska.

July 8, 1976.

[redacted]

Hugh W. Fleischer of Rice, Hoppner & Hedland, Anchorage, for appellants.

Michael Stepovich, Fairbanks, John P. Cook of Lee, Smart, Cook, Dunlap & Biehl, Seattle, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, and ERWIN, Justices.

## OPINION ON REHEARING

CONNOR, Justice.

In this opinion on rehearing we must decide the scope of recovery permitted the employee of an independent contractor under common law tort principles. The question before us stems from an appeal from

a jury verdict in favor of Atlantic Richfield Co. (ARCO) in a wrongful death action brought by the widow of a carpenter, Moses Sloan, killed in a construction accident on the North Slope. In *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717 (Alaska 1975), we reversed and remanded the case for retrial on a single issue: whether ARCO had retained possession of the work site, thereby bringing itself within an exception to the common law general rule that a possessor or owner of land is not liable for the torts of an independent contractor.

In the case at bar this exception was defined in jury instruction # 32 as follows:

"A possessor of land who entrusts to an independent contractor construction on a structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on the land for physical harm caused to them by the unsafe condition of the structure while the possessor has retained possession of the land during the progress of the work. This rule has no application to injuries occurring while the land is turned over to the contractor and he is in exclusive possession of it." [1]

The crucial issue upon which rehearing was granted is whether Sloan, as an employee of an independent contractor, is an "other" under the above language, and hence a person to whom ARCO owed a duty under this exception to the independent contractor rule.

The question has been faced by a number of courts, largely in the context of other common law exceptions to the independent contractor rule as expressed in the Restatement (Second) of Torts (1965). A Special Note in Tentative Draft No. 7, (1962) of the Restatement would have excluded the employees of independent contractors from liability under all exceptions to the rule.

"The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in

---

1. The rule is similarly stated in Restatement (Second) of Torts § 422 (1965), which provides:

"§ 422. *Work on Buildings and Other Structures on Land.*

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion."

any case ultimately be borne by the defendant who hires him.

"Again, when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included." *Id.*, at 17–18.

This reasoning has been found persuasive by some courts. *King v. Shelby Rural Elec. Coop.*, 502 S.W.2d 659, 662 (Ky. 1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974); *Olson v. Kilstofte & Vosejpka, Inc.,* 327 F.Supp. 583, 587 (D.Minn.1971), *aff'd sub nom. Olson v. Red Wing Shoe Co.*, 456 F.2d 1299 (8th Cir. 1972). While California, Michigan and Tennessee hold that the employees of independent contractors are protected, the numerical weight of authority in other jurisdictions, including Arizona, Florida, Kentucky, New Mexico, Washington and Wisconsin, is that they are not, at least with respect to nondelegable duties based on inherently dangerous activities. *King v. Shelby Rural Elec. Coop., supra* at 661–662.

■ That the Special Note was not finally included in the Second Restatement has, however, been considered by some as conclusive that the employees of an independent contractor may recover. *Hagberg v. Sioux Falls*, 281 F.Supp. 460, 468 n.7 (D. S.D.1968). We disagree. It is just as likely that the American Law Institute was unable to agree, and left the issue purposely unclear. *Cf. Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330, 338 (1965). We must decline to apply inconclusive "legislative history" arguments to the Restatements, if for no other reason than they are not legislative enactments. They are useful tools in the task of establishing principles of the common law. But

we decline to approach our traditionally case-based jurisprudence as though it emanates from the Restatements like a code, however scholarly the preparation. The Restatements are indeed reflective of the development of the common law, but they are not determinative.

■ We accept the general conclusions arrived at in *Welker v. Kennecott Copper Co., supra* at 336–40. There the court, after extensive treatment of the cases and the Restatement, concluded that no recovery should be imposed in favor of the employee of an independent contractor for vicarious liability. On the other hand, where an owner or general contractor is independently responsible, as by a failure to prudently exercise controls retained over the details of performing the work at the jobsite, or by a failure to turn over premises free of unreasonable safety hazards, we will allow suit by the employee of the independent contractor.[2] In general, we adhere to the rule that the owner of premises or the general contractor thereon owes to the servants of its independent contractors the duty to avoid endangering the employee by his own negligence or affirmative act, but owes no duty to protect the employee from the negligence of the employee's own master. *See Epperly v. City of Seattle,* 65 Wash.2d 777, 399 P.2d 591, 597 (1965); *E. L. Jones Constr. Co. v. Noland,* 105 Ariz. 446, 466 P.2d 740, 749 (1970). The purpose of the vicarious liability exception is to insure that the employer did not "escape" liability in the sense that no financially responsible party is left available to compensate the injured workman. Under Alaska's system of workmen's compensation, there is by definition a financially responsible party, thus the purpose of vicarious liability has al-

---

2. To the extent that the *Welker* court drew distinctions based on numbered sections of the Restatement, we will not adopt it. We are aware that California courts, apparently adopting the Restatement sections under California law as though they were a code, have reasoned that since a duty exists with respect to some Restatement sections using the word "others", it must exist for all such sections. *Van Arsdale v. Hollinger*, 68 Cal. 2d 245, 66 Cal.Rptr. 20, 437 P.2d 508, 514 (1968) (§ 416); *Woolen v. Aerojet General Corp.*, 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P. 2d 708, 711 (1962) (§ 413). We cannot accept this reasoning, treating, as it does, the Restatement as a legislative code.

ready been served. *See Matanuska Elec. Ass'n v. Johnson,* 386 P.2d 698, 702 (Alaska 1963).

■ We are of the view that ARCO's purported liability under the facts of this case would be essentially vicarious. Any independent negligence in connection with Sloan's death was in reality that of Ramstad Construction Company or its employees. Ramstad was the subcontractor who employed Moses Sloan. Thus Sloan's proper remedy is via the workmen's compensation system. As a result, we vacate our earlier reversal of this case. The judgment of the superior court is affirmed.

One further point remains which was not decided in our original opinion: the award of attorney's fees.

■ Appellant asks that she be relieved from the award against her of attorney's fees in the sum of $10,750. First, she asserts that such fees should not be awarded in favor of a party who is provided with legal representation by an insurance carrier, as ARCO was here. The argument is that ARCO expended nothing other than insurance premiums which it would have paid regardless of whether this action had or had not been filed. But ARCO demonstrated below that under a retrospective premium rating basis it does suffer a "cost" in defending this and other like suits. Appellant's argument, therefore, is unpersuasive in this regard.

Appellant next asserts that subjecting her to any award of attorney's fees should not be permitted where, as here, a good faith claim is put forward. To do so, she argues, has a chilling effect upon the use of our legal system by herself and others who have bona fide claims. She asks that we so hold as an extension of the reasoning set forth in *Malvo v. J. C. Penney Company, Inc.,* 512 P.2d 575, 587–88 (Alaska 1973). Unlike our dissenting colleague, we do not view this case as falling within an exceptional category. The issue we

now decide was closely balanced. But we note that appellant asserted and lost on other theories of recovery which have not been presented in this appeal.

We are unwilling to effect such a major alteration of Rule 82 by judicial decision. We note that the trial judge granted less than half the amount requested by appellee. We find no abuse of discretion.

AFFIRMED.

BOOCHEVER, Chief Justice (partially dissenting).

I dissent from the portion of the opinion pertaining to the appeal from the award of attorney's fees. The court awarded ARCO $10,750.00 in attorney's fees plus $822.40 in costs. It can also be assumed that Mrs. Sloan was required to pay substantial expenses incurred by her counsel even if the case was handled on a contingency fee basis.

In reviewing awards of attorney's fees, we have stated:

> [T]he matter of awarding attorney's fees is committed to the discretion of the trial court. We shall interfere with the exercise of that discretion only where it has been abused. An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable. (footnotes omitted)[1]

In *Malvo v. J. C. Penney Company, Inc.,* 512 P.2d 575 (Alaska 1973), we held that it was manifestly unreasonable under the facts there involved to award full attorney's fees incurred by the defense, stating:

> For where in order to seek judicial remedies, a plaintiff must risk liability for the full amount of attorney's fees the other side sees fit to incur, it takes little imagination to foresee that the size of a party's bank account will have a major impact on his access to the courts.

.    .    .    .    .    .

1. *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970). *See also Malvo v. J. C. Penney Company, Inc.,* 512 P.2d 575, 586–87 (Alaska 1973).

We do not have to reach the constitutional issue since it is "manifestly unreasonable" to establish a policy under Civil Rule 82 that would enable a store owner to receive such a sizeable allowance for attorney's fees against a party who has brought suit in good faith. Nor did the suit involve such complicated factual and legal issues or such substantial sums of money as to justify such a fee to be awarded against an unsuccessful litigant. 512 P.2d at 587.

The court here did not award full attorney's fees to ARCO since $20,900.00 was requested. Nevertheless, the comment of *Malvo* that it would be manifestly unreasonable to award such a sizeable allowance against a party who has brought suit in good faith appears applicable here. In *Malvo,* we were concerned that access to the courts might be governed by the size of one's bank account. We quoted Justice Cardozo's warning against "laying too heavy a burden on the unsuccessful litigant".[2]

Here Mrs. Sloan brought suit seeking to recover damages arising out of the death of her husband. Based on an extremely difficult and closely balanced issue of first impression in this jurisdiction involving the construction of the term "other" used in the Restatement of Torts (Second) sec. 422, we have concluded that her right of action against ARCO is barred. Foreknowledge that such a sizeable sum would be awarded as attorney's fees in the event of her losing could well have constituted an impediment to access to the courts preventing litigation of an issue which she had every right to have resolved.

I do not agree with the majority that to award no fees in a situation such as this would constitute a major alteration of the provisions of Civil Rule 82 which specifies:

> Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

The award of fees where no recovery is had is not mandatory since the rule uses the term "may" rather than "shall". Further, the amount to be awarded is left to the discretion of the trial court.

In determining the "reasonable amount", a court must give consideration to the nature of the claim and the need for making courts available to resolve disputes without the imposition of intolerable burdens. Unfortunately, other than stating broad policy considerations, I am unable to delineate specific guidelines for a trial judge to follow in awarding attorney's fees in cases where the defendant prevails[3] The award of $10,500.00 in this case, however, appears to me to be an abuse of discretion.

While we have indicated our reluctance to interfere with the trial court's discretion in awarding attorney's fees,[4] we overcame that reluctance in *Davidsen v. Kirkland,* 362 P.2d 1068, 1070 (Alaska 1961), to reduce an award from $1,700.00 to $800.00.

Here I would remand for a redetermination of the amount of the fee to be awarded, if any, to an amount not in excess of $2,500.00. This is admittedly an arbitrary figure but would constitute the maximum that I think could be awarded without unduly limiting access to the courts under the facts of this case. Specifically, I could uphold as within the trial court's discretion the award of any sum up to $2,500.00 or the refusal to award any fee.

2. *Malvo v. J. C. Penney Company, Inc., supra,* 512 P.2d at 587.

3. The situation is somewhat akin to the often troublesome question of determining whether a trial court has been clearly mistaken in imposing a specific sentence. See, e. g., *Cleary v. State,* 548 P.2d 952 (Alaska 1976) (J. Burke dissenting) ; *State v. Lancaster,* 520 P.2d 1257 (Alaska 1976) (C. J. Boochever and J. Connor dissenting) ; *State v. Wortham,* 537 P.2d 1117 (Alaska 1975) (J. Connor dissenting) ; *Donlun v. State,* 527 P.2d 427 (Alaska 1974) (C. J. Rabinowitz dissenting).

4. *See, e. g., Froelicher v. Hadley,* 442 P.2d 51 (Alaska 1968) ; *Dale v. Greater Anchorage Area Borough,* 439 P.2d 790, 793 (Alaska 1968) ; *McDonough v. Lee,* 420 P.2d 459, 465 (Alaska 1966).