744 P.2d 102

**Roy PEONE and Janet Peone, Plaintiffs-Appellants,**

v.

**REGULUS STUD MILLS, INC., an Idaho corporation, Defendant-Respondent.**

No. 16409.

Supreme Court of Idaho.

Oct. 2, 1987.

Kenneth B. Howard Jr. (argued), Coeur d'Alene, for plaintiffs-appellants.

Charles M. Dodson, Coeur d'Alene, and Joseph S. Montecucco (argued), Spokane, Wash., for defendant-respondent.

DONALDSON, Justice.

Today, we must answer the question of whether a party to a contract owes a duty of care to the employees of the other contracting party who under the contract is engaged to perform logging activities, in light of *Restatement (Second) of Torts* § 413 or § 416. This question is certified by the United States Court of Appeals for the Ninth Circuit pursuant to I.A.R. 12.1.

The facts as contained in this certification are brief. Regulus Stud Mills, Inc., a sawmill operator, held timber rights to land in north Idaho. Regulus awarded Haynes Logging a contract to remove timber from the land and to deliver it to the Regulus mill. Roy Peone, an employee of Haynes working on the Regulus contract, was injured by a falling dead tree, or snag. As a result of the accident, Peone is now a paraplegic.

Peone filed suit against Regulus in Federal District Court, with jurisdiction based upon diversity of citizenship. Peone alleges that Regulus is liable for his injuries because it negligently employed an incompetent contractor, Haynes Logging, which had acted negligently in removing the timber.

The United States District Court entered summary judgment for Regulus. The court concluded that even though logging is an inherently dangerous activity,[1] as a matter of law Regulus owed no duty to Peone to select a safety-conscious independent contractor, nor did vicarious liability attach for Haynes' failure to use due care. The District Court acknowledged that no controlling Idaho precedent existed, but, nevertheless, it had to make a decision to proceed with the case. Appeal was taken to the Ninth Circuit Court of Appeals. In turn, that court pursuant to I.A.R. 12.1 certified the following question to this Court:

"Whether, under Idaho law, an employer of an independent contractor is liable to an employee of the independent contractor under either or both of the exceptions to the general rule of nonliability provided in the *Restatement of Torts:*

"(1) the negligence of the employer in selecting an independent contractor or in failing to insure that adequate safety precautions were taken, as contemplated by section 413; or

"(2) the vicarious liability to the employee of the independent contractor for the independent contractor's failure to take precautions, as provided by section 416.

"If *Restatement* sections 413 or 416 are applicable under Idaho law, it would appear to be important in resolving these questions of law to determine whether employees of the independent contractor are deemed to be others within the purview of those *Restatement* sections."

The question presented is a narrow one. We are asked to determine whether §§ 413 or 416 of the Restatement is consistent with Idaho law and creates a duty. We are not asked to decide whether any other facet of the law creates a duty. The dissent suggests the *Idaho Minimum Safety Standards & Practices for Logging* creates such a duty. This contention may or may not be correct, but it is not for us to decide. Peone, as plaintiff, chose the federal forum as the arena to vindicate his rights. Our role is limited to answering the certified question. Peone, can argue the applicability of the regulations before the 9th Circuit Court of Appeals. For us to now decide the matter would result in an advisory opinion on a question not certified. The regulations adopted by the Industrial

---

1. For purposes of this appeal, we do not need to decide whether logging is an inherently dangerous activity. Assuming that it is, the appellants' contention is without merit because as this opinion will indicate, the risk involved (a falling snag) is inherent in a logging operation, and not a peculiar risk within the meaning of §§ 413 and 416. The question of whether logging is an inherently dangerous activity is saved for a later day.

Commission do not have any effect on whether the Restatement sections at issue should be the law in Idaho.

The two exceptions at issue today are §§ 413 and 416 of the *Restatement (Second)*. These sections read as follows:

"**§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor—**

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a) fails to provide in the contract that the contractor shall take such precautions, or

"(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

"**§ 416. Work Dangerous in Absence of Special Precautions**

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Courts have not hesitated to adopt §§ 413 and 416 with regard to a duty owed to injured members of the general public. *See* Comment, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Workers' Compensation Proposal*, 48 Fordham Law Rev. 1165, 1167 (1980). Section 413 imposes liability on the third party employer for injuries caused by peculiar or unreasonable risks of physical harm to others. As stated in the comment to § 413:

"This Section is concerned with the special risk, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity arising out of the particular situation created, and calling for special precautions. 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable nature arising out of the work itself."

Section 416 applies specifically to work considered inherently dangerous. It imposes vicarious liability on the third party owner for the contractor's negligence on the theory that the third party owner's duty to use reasonable care is nondelegable presumably due to the hazardous nature of the work.

The United States Court of Appeals, District of Columbia Circuit, has explained the rationale underlying § 416 as follows:

"This exception is premised upon the rationale that, because of the inherently dangerous nature of the work, the *contractee* is obligated to contemplate and guard against such dangers and thus, should not be allowed to 'escape' liability to persons or property negligently damaged in the performance of such work by its contractor. Although unequivocally applicable to third persons who are not employees of a contractor, the exception has been the subject of debate in diverse judicial interpretation when implied to employees of a contractor." *Lindler v. District of Columbia*, 502 F.2d 495, 498 (D.C.Cir.1974). (Emphasis in original.)

The issue we address today, is whether employees of independent contractors are included within the class of "others" within the meaning of the *Restatement* provisions §§ 413 and 416. This issue has seen much debate among the various jurisdictions throughout the United States. *See gener-*

*ally,* Employer Liability—Contractors' Employees, 34 A.L.R. 4th 914 (1984).

Included among the jurisdictions that have adopted §§ 413 or 416 and impose liability are the following: *Aceves v. Regal Pale Brewing Co.,* 24 Cal.3d 502, 156 Cal. Rptr. 41, 595 P.2d 619 (1979); *Clausen v. R.W. Gilbert Const. Co. Inc.,* 309 N.W.2d 462 (Iowa 1981); *Thon v. Saginaw Paint & Manufacturing Co.,* 120 Mich.App. 745, 327 N.W.2d 551 (1982); *Peterson v. City of Golden Valley, N.D.,* 308 N.W.3d 550 (N.D. 1981); and *Lindler v. District of Columbia,* 502 F.2d 495 (D.C.Cir.1974) (applying the law of the District of Columbia). The rationale offered by these courts for imposing liability vary. For example, the *Aceves* court stated:

> "A number of considerations have led courts to depart from the rule of nonliability of an employer for the torts of an independent contractor. Some of the principal ones are that the employer is the one who primarily benefits from the contractor's work, the employer selects the contractor and is free to insist on a competent and financially responsible one, the employer is in a position to demand indemnity from the contractor, the insurance necessary to distribute the risk is properly a cost of the employer's business, and the performance of the duty of care is one of great public importance." *Id.* 595 P.2d at 622.

Some courts have rejected the rationale contained in the *Restatement (Second) of Torts,* Special Note to ch. 15, (Tent. Draft. No. 7, 1962), pp. 17–18,[2] which, if adopted, would have limited liability for injured employees to workmen's compensation benefits. The District of Columbia Court noted that this tentative draft was not included in the final draft of the *Restatement,* and, therefore, should not be used for support. *Lindler, supra,* at 499. "The question is not who may ultimately bear the costs [of worker's compensation], but rather who does the law require to bear the costs." *Id.* at 499. Dean Prosser explained why the language of the tentative draft was not included in the final version of the *Restatement.* He stated that workmen's compensation statutes vary widely among the jurisdictions and concluded "that it appears undesirable, if not impossible, to state anything at all about what the liability is to the employees of an independent contractor." 39 A.L.I. Proceedings 256 (1963). Thus, it is likely that the drafters were unable to agree and purposely left the issue unclear. *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157, 160 (Alaska 1976).

Other jurisdictions have held that employees of independent contractors cannot recover from the third party employer. *See King v. Shelby Rural Electric Co-op Corp.,* 502 S.W.2d 659 (Ky.1973) *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1973); *Tauscher v. Puget Sound Power & Light Company,* 96 Wash.2d 274, 635 P.2d 426 (1981); *Johns v. New York Blower Company,* 442 N.E.2d 382 (Ind.App.1982); *Vertentes v. Barletta Co., Inc.,* 392 Mass. 165, 466 N.E.2d 500 (1984); *Sierra Pacific Power Company v.*

---

2. "The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him." *Id., quoted in King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659, 662 (1973).

*Rinehart,* 99 Nev. 557, 665 P.2d 270 (1983); and *Conover v. Northern States Power Company,* 313 N.W.2d 397 (Minn.1981). There are various rationales advanced by these courts as to why these sections do not apply to employees of independent contractors. First, there is nothing in the discussions of §§ 413 or 416 of the *Restatement (Second) of Torts* to indicate an employee of an independent contractor is within the class of "others" protected by these sections. All of the illustrations set out in the *Restatement* confer liability upon the third party owner when someone other than an employee of the independent contractor is injured. Thus, some courts have held the *Restatement* was not intended to apply to injured employees of independent contractors. *See King, supra.* Other courts have examined the reasons why exceptions to the common law rule were created.

"First, the principal reason for the development of the liability doctrine where independent contractors were involved was to prevent the employer-owner from escaping liability on inherently dangerous work or shifting the liability to his potentially less solvent contractor. Under modern law the employees of the contractor in the vast majority of instances are covered by Workmen's Compensation laws, and the owner does not escape liability since, in effect, he pays the premium for the Workmen's Compensation coverage as part of his contract price." *Johns, supra,* 442 N.E.2d at 388.

An argument advanced by courts which impose liability is that the third party employer should not be able to escape liability by simply contracting with an independent entity. However, the reverse should apply too. The employer should not be exposed to greater liability by contracting with an independent entity. If an employee of the owner was injured, the employee would be limited to worker's compensation benefits. *See Johns, supra* at 388, *Vagle v. Pickands Mather & Company,* 611 F.2d 1212 (8th Cir.1979) (applying Minnesota law) *cert. denied,* 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980). Thus, to allow the employee to recover tort damages places the third party owner at greater risk than if his own servants performed the task.

Other courts have noted that the independent contractor already owes an absolute, nondelegable duty to its employees to provide a safe work place which is free from defects and hazards. *Conover, supra,* 313 N.W.2d at 404. Section 416 also places a nondelegable duty on the third party owner. "Conceptually at least, to adopt here the Restatement rule results in one nondelegable duty too many." *Id.*

In sum, the question of whether employees of independent contractors are included within the class of "others" as defined in the *Restatement (Second) of Torts* §§ 413 and 416 is a close call. Because of the jurisdictions that have the addressed the question there are many excellent arguments for and against imposing a duty. However, upon closer examination we hold that this is not the case to impose a duty upon the third party owner and hold it liable for injuries suffered by the employee of an independent contractor.

Generally, workmen's compensation laws have been enacted to abrogate the common law right to sue the employer in tort but in return, the employee has been given the right to swift and sure, though limited compensation. *See* generally A. Larson, *The Law of Workmen's Compensation,* 1986 ed. To the extent that workmen's compensation is the preferred remedy for occupational injuries, it does appear anomalous and fortuitious to allow an employee to recover in tort from a third party owner when the accident arises out of and in the course of employment. In other words, a third party owner should not be exposed to greater liability by employing an independent contractor.

As pointed out in the *Restatement,* there are exceptions to this policy. The exceptions in both §§ 413 and 416 involve "the peculiar risk" doctrine. The Ninth Circuit in *Nelson v. United States,* 639 F.2d 469 (9th Cir.1980) has explored the 413 exception:

"In some cases, however, the job the owner contracts out is 'likely to create

... a peculiar unreasonable risk of physical harm.' Restatement (Second) of Torts § 413 (1965). In these cases there is a special reason to place initial responsibility on the employer if he is 'more likely to consider the risk' and better able to assess ways to mitigate the risk. Calabresi, *Optimal Deterrence and Accidents*, 84 Yale L.J. 656 (1975). [Other citations omitted] He can be relieved of liability, according to this approach, if he makes what the law considers appropriate and reasonable provision by contractual or other precautions." *Nelson, supra*, 639 F.2d at 476.

Here, Regulus is a sawmill operator. Haynes Logging is a logging contractor. The risk involved in this case is the danger of a falling snag, which is not "a special risk, peculiar to the work to be done...." *Restatement (Second) of Torts* § 413, comment b. The logging contractor is in a better position than the sawmill operator to assess this risk. The logging contractor, when removing timber will most always be faced with problems of dead and diseased trees which create a danger to anyone working in the area. The contractor is able to consider these risks and the necessary costs to insure against them when negotiating a contract price. A sawmill operator, simply by having timber rights on someone else's land, does not have special knowledge about the risks of falling snags on that land.

The Nevada Supreme Court, in reaching the conclusion that no duty is owed by the third party owner to the employee of the independent contractor stated:

"To begin with, the rationale of the independent contractor exception, as well as criticisms of it, are most soundly based on issues of knowledge and secondary or indirect costs of avoiding accidents. The decision to place liability on one group of potential defendants stems from the recognition that, because of greater knowledge about or ability to reduce safety risks, the placement of liability on this group will keep the number and costs of accidents, both in economic and human terms at a minimum." [Citations omitted.] *Sierra Pacific Power Co. v. Rinehart, supra*, 665 P.2d at 274

We conclude that Haynes Logging is in a better position to reduce the risks of injury from falling snags. A logging contractor has more knowledge and expertise than a sawmill operator with respect to the dangers that normally arise during the course of the contractor's normal work routine. A logging operation, by its nature, involves the risk of falling snags to the employees of the logging operation. The peculiar risk doctrine does not encompass taking precautions against ordinary dangers which arise in the course of work. Therefore, neither § 413 nor § 416 of *Restatement (Second) of Torts* is applicable to this case.

SHEPARD, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting.

Because of an inability to join the majority opinion and recognizing that the Ninth Circuit Court of Appeals is not bound to accept this Court's answers to its certified questions, humbly submitted is a contrary view which, although it fell one vote short of commanding a majority, may be of some interest, and, hopefully, enlightenment.

Regulus Stud Mills, Inc., a saw mill operator, held the timber rights to land in North Idaho. Regulus hired an independent contractor, Haynes Logging, to remove timber from the land and to deliver it to Regulus' mill. Peone was one of three Haynes employees working on the Regulus contract. He was alone in the woods [1] fell-

---

1. Defendant on its motion for summary judgment supported it with a memorandum which included a statement of facts which were declared to be undisputed. Number 10, "10. At the time of the accident, plaintiff was one of three workers employed by John Haynes. Plaintiff was the only faller, the other two were bucking and skidding. No one was working close to him at the time of the accident." (Plaintiff's deposition, pp. 90, 91).

Defendants urged that, based on the undisputed fact, "... the plaintiff was the only faller employed by John Haynes and *the only way* to guard against the type of accident was for the plaintiff to be more watchful and careful." A part of the record contains guidelines *Criteria*

ing trees when he was struck by a falling dead tree, or "snag," as a result of which he is now a paraplegic.

Peone had practically no prior experience in logging operations. The circumstances in which this accident occurred are addressed directly by preventative measures in the *Idaho Minimum Safety Standards and Practices for Logging* (R., Vol. 1) promulgated by our Industrial Commission. However, neither Haynes nor Regulus admitted to knowledge of the existence of these regulations at the time of the accident. The safety practices prescribed by the Commission were not followed.

Peone's action against Regulus is founded on Regulus' negligence in employing Haynes, an independent contractor who did not know of, much less follow, the logging safety standards established by the Industrial Commission. He also claims Regulus is vicariously liable for Haynes' negligence in neither knowing of nor following the logging safety regulations.

The United States District Court entered summary judgment for Regulus. The court concluded, as a matter of law, that Regulus had no duty to Peone to select a safety-conscious independent contractor, *nor did vicarious liability attach to Regulus for Haynes' failure to follow the logging safety regulations.* The district court

acknowledged that no controlling Idaho precedent existed but, nevertheless, it had to make a decision and did so. Appeal was taken to the Ninth Circuit Court of Appeals. In turn, that court certified questions to this Court, which were accepted:

Whether, under Idaho law, an employer of an independent contractor is liable to an employee of the independent contractor under either or both of the exceptions to the general rule of nonliability provided in the *Restatement of Torts:*

(1) the negligence of the employer in selecting an independent contractor or in failing to insure that adequate safety precautions were taken, as contemplated by section 413; or

(2) the vicarious liability to the employee of the independent contractor for the independent contractor's failure to take precautions, as provided by section 416.

If *Restatement* sections 413 or 416 are applicable under Idaho law, it would appear to be important in resolving these questions of law to determine whether employees of the independent contractor are deemed to be "others" within the purview of those *Restatement* sections.

For the reasons discussed below, we find Restatement (Second) of Torts §§ 411, 413, and 416 (1965) [2] correctly state the law as it

---

*for a Recommended Standard ... Logging from Felling to First Haul* promulgated by the U.S. Department of Health, Education and Welfare through the National Institute of Occupational Safety and Health, one of which provides, "(I) Snags or trees which are unsafe to be cut shall be removed by some other method." Another provides, "(M) Deteriorated or hazardous snags or trees shall be felled if they could endanger the cutting area...." In Section 5—*Posting,* is found this provision, "(c) Snags and logs that are partially bucked shall be conspicuously marked with red and white striped tape."

Near the conclusion of the document is this paragraph at p. 37:

From analysis of available logging fatality and injury data (Tables VIII–1–12), NIOSH finds that for convenience of subsequent analysis and discussion and for development and organization of work practices designed to eliminate or alleviate logging hazards, five major classes of hazards are categorized in this document. These categories are (1) falling and flying objects, (2) rolling and moving logs, (3) chain saw operations, (4) slips, trips, and falls, and (5) moving equipment.

The category first mentioned is the first discussed:

(1) Falling and flying objects are major sources of danger to workers in all logging operations from felling to first haul. Vibration from chain saws, moving equipment and falling trees can cause loose parts and even whole trees to fall. Improper cutting techniques can cause a tree to fall in an unexpected direction and/or to barberchair (split vertically), which also results in loss of control of the felling direction and propels large splinters from the stump. Felling a tree into standing trees can cause breakage and propel tree parts into occupied work areas, dislodge loose parts in other trees, kickback the falling tree, and shatter snags. A worker struck by one of these falling or flying objects can be seriously injured or killed. *Criteria for a Recommended Standard, Logging from Felling to First Haul,* P. 38.

2. For the texts of §§ 413 and 416, *see infra,* p. 376, 744 P.2d at 104.

applies to members of the general public. With regard to whether employees of an independent contractor are deemed to be "others" we limit our holding to the following: Such employees are within the meaning of "others" *only* under § 416. The nondelegable duty to provide a safe workplace is appropriate in the narrow context of inherently dangerous work contemplated by § 416.

## I.

## APPLICATION TO MEMBERS OF THE GENERAL PUBLIC

The issues as framed by the Ninth Circuit implicate an additional Restatement (Second) provision, namely § 411, which provides:

§ 411. **Negligence in Selection of Contractor**

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

Consideration of this section need not detain us long since the concept is already established in Idaho law by *Joslin v. Idaho Times Publishing Co.*, 60 Idaho 235, 91 P.2d 386 (1939). Plaintiff Joslin was a member of the general public who was struck by the motor vehicle of a news carrier of Idaho Times Publishing Co. *There a unanimous Court stated that those who employ a contractor to do hazardous work must exercise care to select a contractor who operates safely. Id.* at 241, 91 P.2d at 388.

Restatement (Second) of torts §§ 413 and 416 read as follows:

§ 413. **Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor**

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, *or*

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

§ 416. **Work Dangerous in Absence of Special Precautions**

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Courts have not hesitated to adopt §§ 413 and 416 with regard to a duty owed to injured members of the general public, *see* Comment, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Workers' Compensation Proposal,* 48 Fordham L.Rev. 1165, 1167 (1980), and neither do we.

The "general rule" in this area of law is embodied in Restatement (Second) of Torts § 409 as follows:

Except as stated in §§ 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.

Comment b to this section states that this is the common law rule. It is now riddled by 20 exceptions:

These exceptions are stated in §§ 410–429. They are so numerous, and they have so far eroded the "general rule," that it can now be said to be "general" only in the sense that it is applied where no good reason is found for departing

from it. As was said in *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226 (1937), "Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions."

All of these provisions are inherently limited in their application even with regard to injured members of the general public. Sections 411 and 413 place a greater duty upon professionals in the field of work to be done than it places upon the ordinary person in the street. Comment f to § 413 provides:

> f. Again, as in the case of the rule stated in § 411, the extent of the employer's knowledge and experience in the field of work to be done is to be taken into account; and an inexperienced widow employing a contractor to build a house is not to be expected to have the same information, or to make the same inquiries, as to whether the work to be done is likely to create a peculiar risk of physical harm to others, or to require special precautions, as is a real estate development company employing a contractor to build the same house.

Section 416 applies specifically to work considered to be inherently dangerous. It imposes vicarious liability on the employer for the contractor's negligence on the theory that the employer's duty to use reasonable care is nondelegable presumably due to the hazardous nature of the work. Restatement (Second) of Torts, ch. 15, Topic 2, Harm Caused by Negligence of a Carefully Selected Independent Contractor, Introductory Note, p. 394.

The United States Court of Appeals, District of Columbia Circuit, has explained the rationale underlying § 416 as follows:

> This exception is premised upon the rationale that, because of the inherently dangerous nature of the work, the *contractee* is obligated to contemplate and guard against such dangers and thus, should not be allowed to "escape" liability to persons or property negligently damaged in the performance of such work by its contractor. Although unequivocally applicable to third persons

who are not employees of a contractor, the exception has become the subject of debate and diverse judicial interpretation when applied to employees of a contractor. *Lindler v. District of Columbia*, 502 F.2d 495, 498 (D.C.Cir.1974) (emphasis original).

## II.

## APPLICATION TO EMPLOYEES OF INDEPENDENT CONTRACTOR

The precise question we address today is whether the Restatement provisions discussed above have application to employees of an independent contractor. This issue requires that we first determine whether Idaho's workmen's compensation statutes immunize Regulus from tort liability for an injury to a Haynes employee. Unlike members of the general public, state legislatures have decreed that *employees* must give up the full range of common law remedies against their employers in return for theoretically swift and sure, though limited, compensation when injured in the course of their employment. *See generally*, A. Larson, *The Law of Workmen's Compensation*, 1986 ed.

Under the proper circumstances, I.C. Title 72, chs. 1–9, our workmen's compensation statutes, provide that every employer shall secure the payment of workmen's compensation. In return, the employer's liability is limited. I.C. § 72–301 (Supp. 1986) and I.C. §§ 72–209, –211 (1973). "Employer" is defined as:

> (10) "Employer" means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured, it means his surety so far as applicable. I.C. § 72–102(10) (Supp.1986).

Idaho Code § 72–216 (1973) contemplates that one cannot escape liability merely by hiring a contractor. If the contractor has not secured compensation, then the employer must do so:

72–216. Contractors.—(1) Liability of employer to employees of contractors and subcontractors. An employer subject to the provisions of this law shall be liable for compensation to an employee of a contractor or subcontractor under him who has not complied with the provisions of section 72–301 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer.

The record does not reveal clearly whether Haynes or Regulus provided workmen's compensation for Peone, but it is probable that Haynes did; otherwise, Peone would not be in a position to sue Regulus. Assuming that Haynes has purchased coverage for its employees, and Regulus has not, I.C. § 72–223 (Supp.1986) becomes dispositive of this analysis. I.C. § 72–223(1) provides:

72–223. Third party liability.—(1) The right to compensation under this law shall not be affected by the fact that the injury, occupational disease or death is caused under circumstances creating in some person other than the employer a legal liability to pay damages therefor, such person so liable being referred to as the third party. *Such third party shall include those employers described in section 72–216, Idaho Code, having under them contractors or subcontractors who have in fact complied with the provisions of section 72–301, Idaho Code.* (Emphasis added.)

The question of whether the status of a statutory employer exempts all such employers from tort liability as third parties under I.C. § 72–223 was definitively analyzed by Justice Bakes in *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho 389, 690 P.2d 324 (1984):

The defendants cite ... [citations omitted] for the proposition that all employers within the definition of I.C. § 72–102(10) are immune from tort liability as a third party. We do not agree. The exclusive liability of an employer under I.C. § 72–209(1), and the exclusive remedies of an employee under I.C. § 72–211, are both specifically made "subject to the provisions of section 72–223." I.C. § 72–223 provides that the workmen's compensation law does not disturb the injured employee's right to sue a third party for "legal liability to pay damages," and further that "[s]uch third party *shall include those employers described in section 72–216, having under them contractors or subcontractors who have in fact complied* with the" statute requiring procurement of workmen's compensation insurance. (Emphasis added.) Shearer was an employer, described in I.C. § 72–216, since it had under it a contractor, Atlas, and Shearer was liable for workmen's compensation benefits to Runcorn if Atlas had not provided the coverage. *See Loughmiller v. Interstate Farmlines, Inc.*, 107 Idaho 179, 687 P.2d 569 (1984) (direct employer/contractor failed to provide coverage). However, in this case, Atlas, the direct employer and contractor under Shearer, did in fact provide workmen's compensation coverage to Runcorn. Therefore, Shearer is within the definition of a "third party" in I.C. § 72–223, who can be held liable for damages, even though it also falls within the definition of statutory "employer" under I.C. § 72–102(10). 107 Idaho at 393, 690 P.2d at 328 (emphasis original).

Thus, in this case, our statutes specifically contemplate that general contractors or employers, such as Regulus, are not immune from tort liability to the employees of contractors it hires. There is, therefore, no statutory impediment to the application of the Restatement (Second) provisions in Idaho.

Of the three Restatement (Second) sections under consideration here, § 416 appears to be the most appropriate one for application to the facts of this case. Sections 411, 413, and 416 overlap to a significant degree. *See* comments e and f to § 413. We are reluctant to expand an employer's liability more than is necessary to

resolve this case by adopting overlapping, and potentially confusing, Restatement sections.

Section 416 is generally thought to apply to inherently dangerous work. Annotation, *Liability of Employer with Regard to Inherently Dangerous Work for Injuries to Employees of Independent Contractor,* 34 A.L.R. 4th 914, 918, n. 5 (1984). There is little doubt that empirical information establishes the fact that logging is one of the most hazardous occupations in the United States. "Logging From Felling to First Haul," National Institute for Occupational Safety and Health, July 1976, p. 33, *cited in* R., Vol. 1.

The question of whether employers should be vicariously liable for injuries to the employees of independent contractors has been frequently litigated in American courts. Approximately 32 jurisdictions have faced the question and the courts appear to be evenly split. *See* 34 A.L.R. 4th 914, *supra.* Courts that deny liability include the following: *Vagle v. Pickands Mather & Co.,* 611 F.2d 1212 (8th Cir.1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980) (applying Minnesota law); *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157 (Alaska 1976); *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659 (Ky.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974); *Welker v. Kennecott Copper Co.,* 1 Ariz.App. 395, 403 P.2d 330 (1965); *Epperly v. City of Seattle,* 65 Wash.2d 777, 399 P.2d 591 (1965). Jurisdictions imposing liability include: *Lindler v. District of Columbia,* 502 F.2d 495 (D.C.Cir.1974) (applying the law of the District of Columbia); *Thon v. Saginaw Paint Mfg. Co.,* 120 Mich. App. 745, 327 N.W.2d 551 (1982); *Clausen v. R.W. Gilbert Construction Co., Inc.,* 309 N.W.2d 462 (Iowa 1981); *Heath v. Huth Engineers, Inc.,* 279 Pa.Super. 90, 420 A.2d 758 (1980); *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968). The 1984 publication of 34 A.L.R. 4th 914 appears to be the most recent count on the jurisdictional split.

The most widely accepted rationale of cases denying liability is based on Restatement (Second) of Torts, ch. 15, special note 17–18 (Tent. Draft No. 7, 1962), which contained the following language:

"The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him." *Id., quoted in King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659, 662 (1973).

A companion rationale is that allowing recovery against the independent contractor's employer would create a "windfall" for the injured employee. Normally, the employee's recovery would be limited to workmen's compensation. This reasoning holds that there is no valid reason why an employer of an independent contractor should be subject to greater liability than he would have if he had used his own

employees on the job. *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659, 662–63 (Ky.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974); *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1219 (8th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980).

Courts that impose liability find the Restatement Tentative Draft unpersuasive. Dean Prosser, explaining why the language was not included in the final draft, stated that states' workmen's compensation statutes varied widely and concluded "that it appears undesirable, if not impossible, to state anything at all about what the liability is to employees of an independent contractor." 39 ALI Proceedings 246 (1963). Thus, it is likely that the drafters were unable to agree and purposely left the issue unclear. *Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 160 (Alaska 1976). The District of Columbia Circuit rejected the Tentative Draft No. 7 rationale, reasoning: "The question is not who may ultimately bear the costs [of workmen's compensation], but rather who does the law require to bear the costs." *Lindler v. District of Columbia*, 502 F.2d 495, 499 (D.C.Cir. 1974).

A leading rationale for the view imposing liability is provided by Dean Prosser:

> Against this argument, it has been contended that the enterprise is still the employer's, since he remains the person primarily to be benefited by it; that he selects the contractor, and is free to insist upon one who is financially responsible, and to demand indemnity from him, and that the insurance necessary to distribute the risk is properly a cost of his business. W. Prosser, *Handbook of the Law of Torts* § 71, p. 468 (4th ed. 1971) (footnote omitted). *Accord, Aceves v. Regal Pale Brewing Co.*, 24 Cal.3d 502, 156 Cal.Rptr. 41, 595 P.2d 619, 622 (1979).

That the issue is a close call is indicated by the even split among jurisdictions. *See*

34 A.L.R. 4th 914, *supra*. However, we find the rationale of courts denying liability unpersuasive and further that the facts of this case are appropriate for imposing tort liability upon Regulus. The rationale of Tentative Draft No. 7 of the Restatement (Second) of Torts would lead to absurd results. What if a truck driver of one of Regulus' major customers ran down a Regulus employee? Should the fact that the price of the studs includes, at least in part, the cost of workmen's compensation premiums shield that customer from tort liability? We find the comment of the *Lindler* court well-taken. The *quid pro quo* of limited liability in exchange for contributions to the workmen's compensation fund is not appropriate for those who are not required by law to make such contributions. 502 F.2d at 499.

The "windfall" rationale is equally unpersuasive. Idaho Code § 72–223 specifically contemplates that employers of independent contractors may be legally liable in addition to the direct employer's workmen's compensation liability. The "windfall" thinking misses the point. The employer *has not* used his own employees and *has not* paid workmen's compensation for the independent contractor's employees. Therefore, he should not receive immunity from tort liability.

In addition, many courts that refuse to impose vicarious liability on employers under § 416 based on the rationale of Tentative Draft No. 7 *do* allow an action grounded in the negligence of the employer under §§ 411 and 413. *See generally, Moloso v. State*, 644 P.2d 205, 210 (Alaska 1982); Comment, *supra*, 48 Fordham L.Rev. 1165, 1182 (1980).

An overriding concern in this case must be the need to secure safe working conditions in the dangerous occupation of logging. The *Idaho Minimum Safety Standards and Practices for Logging*[3] regulations place the responsibility for safety squarely on Regulus. The regulations define "employer" as follows:

---

**3.** The legislature delegated the authority to the Industrial Commission to adopt reasonable minimum safety standards in I.C. § 72–720 (Supp. 1986) (former I.C. § 72–1101 which was in effect when the regulations here at issue were promulgated in 1969).

1.6 EMPLOYER—"Employer," unless otherwise stated, includes any body of persons, corporate or unincorporated, public, or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, *or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason,* is not the direct employer of the workman there employed. If the employer is secured, it includes his surety so far as applicable. (Emphasis added.) (R., Vol. 1.)

Thus, the definition clearly contemplates the interposition of an independent contractor between the employer and the worker, the factual situation of this case. Nevertheless, the Code requires *the employer* to see that the safety practices it describes are followed.

The facts of this case indicate that Peone was inexperienced and was working alone, and that no steps were taken to remove the unusually high number of dangerous snags in the area in which he was working when he was injured. All of these circumstances are prohibited by the Code. Yet, because neither Regulus nor Haynes knew of the Code's existence, the safety measures were not followed. *The Code places the responsibility to follow its provisions on the employer, not the independent contractor.* Thus, the nondelegable duty or vicarious liability aspect of § 416 is uniquely appropriate.

In addition, failure to ensure that the Code was followed may impose liability upon Regulus independent of the Restatement. It is settled that violation of regulations may constitute negligence *per se, Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 586, 548 P.2d 80, 86 (1976), if certain criteria are met. *See Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986). The Logging code as a basis for Regulus' liability [4] was argued vigorously by Peone at the summary judgment hearing and in his appellate briefs. The district judge, like Regulus, brushed the regulations aside, assigning them little importance. However, we do not take them so lightly. The Restatement notes that the rules of §§ 416–29 "arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor." Restatement (Second) of Torts, ch. 15, Topic 2, Harm Caused by Negligence of a Carefully Selected Independent Contractor, Introductory Note, p. 394. The logging Code provides the necessary legislative and administrative policy that imposes vicarious liability upon Regulus.

To bolster this policy argument, we note that in a recent case discussing the duties imposed upon employers by OSHA regulations, Justice Huntley wrote: "[W]e are persuaded that the intent of Congress in enacting OSHA, namely 'to assure safe and healthful working conditions for every man and woman in the Nation,' can best be served by allowing instructions of negligence *per se* for violations of OSHA regulations." *Sanchez, supra,* 112 Idaho at 619, 733 P.2d at 1244. Idaho Code § 72–721 (1973) provides: "The [Industrial] commission is empowered to require all employers to adopt rules which have been approved by it for the protection and safety of employees...." Surely this expression of legislative intent can best be served by recognizing that Regulus has a common law duty to follow the mandate of the Logging Code.

Regulus argues that to impose liability upon one who employs an independent contractor will force the employer to become involved in the hiring, training, and supervision of the independent contractor's em-

---

**4.** Restatement (Second) of Torts § 424 specifically imposes liability for failure to follow safety regulations:

§ 424. Precautions Required by Statute or Regulation

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

ployees, with the result that independent contractors will vanish. Further, Regulus argues that the cost of complying with the Logging Code will drive small logging companies out of business. Peone replies that employers need not involve themselves in the independent contractors' day-to-day business; rather, employers must only make certain that the independent contractors which they hire know of and follow the prescribed logging safety procedures. If the independent contractors are found to have done so, then they will not be negligent, and, in turn, their employer will incur no vicarious liability. Further, Peone questions whether the cost of complying with the Code is outweighed by the social cost of *not* complying, when such noncompliance results in a worker's severe disability, such as Mr. Peone.

Both parties express legitimate concerns. However, possessing no crystal ball that permits us to foresee the results of our decision today on the logging industry in Idaho, what we *do* know is that Regulus and Haynes would have us treat the logging safety Code as nonexistent. They are not free to ignore the mandate which the legislature delegated to our Industrial Commission. Neither are we. This Court does not sit to allow the *Idaho Minimum Safety Standards and Practices* to be so unheeded. The distinguished panel of labor, industry, and insurers—whose collective wisdom aided in the development of the revised edition of the Logging Code—obviously thought the prevention of crippling injuries to be a paramount concern throughout the industry.[5]

## CONCLUSION

The question of whether the employer of an independent contractor is liable in tort for an injury to the contractor's employee presents first the question of whether a state's workmen's compensation laws shield the employer. Idaho's statutes specifically contemplate that Regulus may incur such liability even when its independent contractor has provided workmen's compensation security for its employees. Regulus' liability is based upon the *Idaho Minimum Safety Standards and Practices* which place the responsibility for compliance squarely upon Regulus. Under these circumstances, the nondelegable duty which Restatement (Second) of Torts § 416 places upon employers engaged in inherently dangerous work is uniquely appropriate. Employers such as Regulus will be encouraged to hire contractors who know of and follow the logging safety code, thus achieving the legislative directive of preventing serious injuries.

Conspicuously absent from the majority opinion is any mention whatsoever of the *Idaho Minimum Safety Standards and Practices for Logging.* Where the regulations provide a persuasive basis for imposing liability upon Regulus for Mr. Peone's injury, it is incomprehensible that the majority choose to utterly ignore the very existence of these safety practices.

The parties may, perhaps, be excused in a human-nature, if not a legal, sense. Not so, however, with judges whose decision today endorses and will even encourage ignorance and the ignoring of the regulations by employers who are, or ought to be, required to see that they are followed.

Since these regulations are promulgated by our Industrial Commission pursuant to authority duly delegated by the legislators, it would be the act of a truly responsible judiciary to see that their mandate is followed. That not one of three members in the majority deigns to even discuss the applicability of these regulations suggests a serious flaw in our collegiality as a court.

## ADDENDUM

The majority responded to a portion of the foregoing opinion which gave due consideration to the Idaho Minimum Safety Standards and Procedures for Logging by making a revision, P. 103, acknowledging

---

5. The panel included, among others, representatives of the International Woodworkers of America, the Lumber & Sawmill Workers, Potlatch Forests, Inc., Diamond National Corpora-

tion, Boise Cascade Corporation, Employers Mutual of Wausau, and Argonaut Insurance Company of Boise. (R., Vol. 1.)

existence of the same, but asserting their total inapplicability to this Court's assumed task of answering the question presented. "Our role is limited to answering the certified question." *Id.* I am unable to agree with that tenent, and suggest that precisely the opposite is so.

The majority's short memory is directed to *Toner v. Lederle Laboratories*, 112 Idaho 328, 732 P.2d 297 (1987) in which we reformulated certified questions as we saw fit. That the United States Court of Appeals there specifically invited us to do so, 112 Idaho at 332,732 P.2d at 302, does not restrict our freedom of action. 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4248, p. 532 (1978).

Wright and Miller explain that the Fifth Circuit adopted the practice of leaving reformulation up to the state courts when it discovered, seven years after the fact, that it had asked the state court the wrong question. *Green v. American Tobacco Co.*, 409 F.2d 1166 (5th Cir.1969):

> To guard against a recurrence of this it is now its universal practice, when certifying to emphasize that the particular phrasing used in the certified question is not to restrict the state court and that the state court is free to reformulate the questions as it sees fit. *State courts have availed themselves of this freedom whether or not it is expressly stated in the certificate.* Wright, Miller & Cooper, supra, pp. 531–32. See cases cited therein. (Emphasis added).

The Fifth Circuit position has been adopted by the Ninth Circuit Court of Appeals, *Meckert v. Transamerica Insurance Co.*, 742 F.2d 505, 507 (9th Cir.1984), where in certifying a question to this Court, the Ninth Circuit Court specifically cited a 1976 case from the Fifth Circuit and the very same pages in Wright, Miller & Cooper, cited above.

In addition to being in error in saying that we are precluded from reformulating the certified questions, the majority inaccurately portrays my opinion as having done so. On the contrary, the logging safety regulations supply the *policy reason* for

applying the *vicarious liability* contemplated by § 416 to Regulus, *supra*, p. 114. The regulations, which have the force of statutes,[6] require the *employer* of the independent contractor to "maintain places of employment which are safe according to the standards as set forth herein" and to "do every other thing necessary within the framework of this Code to protect the life and safety of employees." *Idaho Minimum Safety Standards and Practices for Logging*, supra, pp. 9 and 12. It is a strange opinion for the Court which refuses to apply Idaho law to the question certified to us. Thus, although the majority feels comfortable in basing an opinion on the *ipse dixit* that "Haynes Logging is in a better position to reduce the risks of injury from falling snags" our Industrial Commission, standing in the shoes of the legislature, has concluded otherwise.

HUNTLEY, J., concurs.

---

6. *Higginson v. Westergard*, 100 Idaho 687, 690,     604 P.2d 51, 54 (1979) (Donaldson, J.).