**Roy PEONE and Janet Peone, Plaintiffs–Appellants,**

v.

**REGULUS STUD MILLS, INC., an Idaho corporation, Defendant–Appellee.**

No. 84–4052.

United States Court of Appeals, Ninth Circuit.

Argued June 4, 1985.

Submitted Sept. 26, 1988.

Decided Oct. 3, 1988.

Joseph S. Montecucco, Spokane, Wash., and Charles M. Dodson, Coeur d'Alene, Idaho, for defendant-appellee.

Before HUG, FARRIS and BOOCHEVER, Circuit Judges.

HUG, Circuit Judge:

In this case, we are asked to determine whether, under Idaho law, an employer of an independent contractor may be held liable for injuries incurred by an employee of the independent contractor as a result of the latter's failure to abide by safety regulations.

Roy and Janet Peone appeal from the district court's award of summary judgment in favor of defendant Regulus Stud Mills, Inc. ("Regulus"). Roy Peone's claim is for his injuries and resultant damages. Janet Peone's claim is for loss of consortium and her related damages resulting from her husband's injuries. For ease of reference, we shall refer to the appellants as "Peone."

Regulus operated a sawmill and purchased timber rights on a third party's land. It hired Haynes Logging Company ("Haynes"), an independent contractor, to remove the timber from the land. Roy Peone was an employee of Haynes. On May 25, 1979, Roy Peone was removing timber in an area with standing dead trees, known as snags. While he was working, a snag fell on him, leaving him paralyzed for life.

Peone brought suit against Regulus in federal district court, invoking diversity jurisdiction. Three bases of tort liability were alleged. First, Peone argued that, in view of the inherently dangerous nature of logging, Regulus was vicariously liable for Haynes' failure to use due care in conducting the logging operations. Second, Peone asserted that Regulus was negligent in its hiring of a contractor who failed to use due care in performing the work. Third, Peone alleged that Regulus had a statutory obligation to ensure compliance with the *Idaho Minimum Safety Standards And Practic-*

Kenneth B. Howard, Coeur d'Alene, Idaho, for plaintiffs-appellants.

*es For Logging* (hereinafter *"Standards "*), and that its failure to discharge that duty resulted in Roy Peone's injury.

The district judge rendered summary judgment in favor of Regulus on July 9, 1984. He acknowledged the absence of controlling Idaho precedent on the issues and stated his reluctance to create new policy in Idaho imposing a duty upon the employer of an independent contractor. Peone brought this appeal, invoking our jurisdiction under 28 U.S.C. § 1291 (1982). In view of the importance of the issues involved and the lack of Idaho law on the matter, we certified a question to the Supreme Court of Idaho pursuant to Idaho R.App.P. 12.1, and deferred submission of this case. Our question was as follows:

> Whether, under Idaho law, an employer of an independent contractor is liable to an employee of the independent contractor under either or both of the exceptions to the general rule of nonliability provided in the *Restatement of Torts:*
>
> (1) the negligence of the employer in selecting an independent contractor or in failing to ensure that adequate safety precautions were taken, as contemplated by section 413; or
>
> (2) the vicarious liability to the employee of the independent contractor for the independent contractor's failure to take special precautions, as provided by section 416.
>
> If *Restatement* sections 413 or 416 are applicable under Idaho law, it would appear to be important in resolving these questions of law to determine whether employees of the independent contractor are deemed to be "others" within the purview of those *Restatement* sections.

On October 2, 1987, the Supreme Court of Idaho rendered a decision from which Justice Bistline strongly dissented. *See Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102 (1987) (Huntley, J., concurring in dissent). The majority interpreted our question as "a narrow one," stating, "We are asked to determine wheth-

er §§ 413 or 416 of the *Restatement* is consistent with Idaho law and creates a duty. We are not asked to decide whether any other facet of the law creates a duty." *Id.* 744 P.2d at 103. Specifically, the majority—over the dissent's strong objections—chose not to address whether the *Standards* created a duty on the part of Regulus towards Peone. Reaching only the other two issues, the majority concluded that neither section 413 nor section 416 of the *Restatement* created a duty in this case.

The court's ruling does not resolve this case because the majority did not address whether the *Standards* gave rise to a duty on behalf of Regulus towards Peone. We must now examine the issue ourselves.[1] We hold that under Idaho law, an employer of an independent contractor may in some circumstances be liable toward the employee of the independent contractor as a result of the latter's failure to abide by the *Standards*.

■ As a threshold matter, we must determine whether Idaho's Workmen's Compensation Law, Idaho Code ("I.C.") § 72–102 *et seq* (1973 & Supp.1987), shields Regulus from tort liability for an injury incurred by Haynes' employee. If immunity exists by virtue of this statute, Peone is precluded from recovering against Regulus under any of the theories asserted.

The Idaho statute provides that employers shall assure the payment of workmen's compensation, and, in return, the employer's tort liability is limited. *See* I.C. §§ 72–301 (Supp.1987), 72–209, 72–211 (1973). "Employer" is defined to include those who employ independent contractors. *See* I.C. § 72–102(10) (Supp.1987). Those employers must provide workmen's compensation benefits to the employees of a contractor if the contractor has not provided those benefits. I.C. § 72–216 (1973).

The Supreme Court of Idaho left no doubts in *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho 389, 690 P.2d 324 (1984) that under Idaho law an employer of

---

**1.** Upon our request, the parties have submitted supplemental briefs on the applicability of the *Standards* to this case.

a contractor may be held liable as a *third party* to the employee of the contractor in spite of the fact that the employer qualifies as a "statutory employer" under the Idaho workmen's compensation scheme. In that case, a lumber mill business ("Shearer") contracted with Atlas Boiler & Equipment Company to have a boiler on Shearer's premises repaired. While performing the contracted work, Runcorn, an employee of Atlas, was injured due to the apparent negligence of a Shearer employee. Runcorn recovered workmen's compensation benefits from Atlas' surety and filed a third-party action against Shearer, alleging negligence in causing the accident.

Finding that Shearer fell within the definition of "employer" under the Workmen's Compensation Law, I.C. § 72–102(10), the court addressed whether all "statutory employers" are immune from tort liability by virtue of I.C. § 72–209(1), which limits an employer's liability for workmen's compensation benefits. *Id.* 690 P.2d at 328. The court noted that the provisions limiting the employer's liability are subject to section 72–223 (Supp.1987), "[which] provides that the workmen's compensation law does not disturb the injured employee's right to sue a third party for 'legal liability to pay damages,'...." *Id.* The court further noted that such third parties may include employers of contractors. *Id.* The court concluded, "Shearer is within the definition of a 'third party' in I.C. § 72–223, who can be held liable for damages, even though it also falls within the definition of statutory 'employer' under I.C. § 72–102(10)." *Id.* It is therefore evident that the statute poses no barrier to recovery by Peone in this case.

■ We thus reach the question of whether the Idaho *Standards* provide a basis for liability. We find they do. The *Standards* were developed by the Industrial Accident Board of the State of Idaho and have the full force and effect of law. *Standards*, § 2.1. They set forth safety procedures for the logging industry with which "every employer and every employee working in the State of Idaho shall conform." *Id.* § 2.2. As Justice Bistline pointed out, violations of regulations may constitute negligence *per se* under Idaho law if certain criteria are met. *Peone*, 744 P.2d at 114.

In *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986) the supreme court stated:

[I]t is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se.* Several criteria must, however, be met before negligence as a matter of law will be found. First, the statute or regulations must clearly define the required standard of conduct; second, the statute or regulation must have been intended to prevent the type of harm defendant's act or omission caused; third, the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and fourth, the violation must have been a proximate cause of the injury.

*Id.* 733 P.2d at 1242 (citations omitted).

In this case, we can say that all but the last element is definitively met. First, the *Standards* "clearly define the required standard of conduct." Not only do they clearly set forth procedures designed to ensure general safety in the logging area,[2]

---

**2.** *See, e.g.,* section 3.6:

A definite procedure for checking the welfare of all workmen during working hours shall be instituted and all workmen so advised. The employer shall assume responsibility of work assignments so that *no worker shall be required to work in a position or location so isolated or hazardous that he is not within visual or audible signal contact with another person who can render assistance in case of emergency.* In any operation where cutting, yarding, loading, or a combination of these duties are carried on *there shall be a mini-* *mum crew of two persons* who shall work as a team, and shall be in visual or audible signal contact with one another. (Equipment motor noise is not accepted as a signal.) (Emphasis added.)

*See also* section 18.19:

A competent person properly experienced in this type of work shall be placed in charge of falling and bucking operations. Inexperienced workmen shall not be allowed to fall timber or buck logs unless under the direction of an experienced workman.

but they also contain explicit precautions against falling snags. Section 18.7 of the *Standards* states:

> Before starting to fall or buck any tree or snag, the cutter must survey the area for possible hazards and proceed according to safe practices. Snags, which are unsafe to cut, shall be blown down with explosives, or felled by other methods.

Additionally, section 18.8 directs that "dangerous or hazardous snags shall be felled prior to or in the course of cutting a strip." It is obvious from the language of these sections that the precautions were designed to prevent precisely the type of harm that befell Roy Peone, and that Peone, as a logger, was "a member of the class of persons the ... regulation was designed to protect." Thus, the second and third criteria in *Sanchez* are met.

■ The final element of the *Sanchez* test, that the violation of the *Standards* must have proximately caused the injury, is a factual matter properly determined by the district court. In his oral argument to the district court on the motion for summary judgment, Peone's counsel alleged numerous violations of the *Standards*. Specifically, he stated that Roy Peone—an inexperienced sawyer who had not been instructed of the danger associated with snags—was sent to work alone, isolated from other workers, in an area that had not been inspected for hazardous snags.[3] If these allegations are correct, the instances surrounding the accident stood in blatant violation of the *Standards*, which direct that no employee work alone in logging areas, and which require, at a minimum, that cutting areas be surveyed for snags. *See Standards*, §§ 3.6, 18.7, and 18.8. On appeal, Regulus has not refuted Peone's allegations.[4] Peone's assertions give rise at least to a material issue of fact, rendering summary judgment in favor of Regulus clearly inappropriate. *See Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). On remand, issues of fact must be resolved as to whether the *Standards* were violated and whether the violation was a proximate cause of the injury. A finding that a violation of the *Standards* proximately caused the accident would fulfill the final requisite to imposing liability under the *Sanchez* test.

■ As a final matter, however, we must determine whether Regulus was legally required to ensure compliance with the *Standards*. The *Sanchez* rule imposes liability only upon those who are held to a duty of care defined by statute or regulation. If Regulus was not legally obliged to ensure compliance with the *Standards*, it cannot be held liable for an accident which could have been prevented through strict adherence to the regulations.

Regulus argues that the *Standards* do not apply to it. By its own terms, the *Standards* apply to employers, which are defined to include

> the owner or lessee of premises, *or other person who is virtually the proprietor or operator of the business there carried on*, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed.

*Standards*, § 1.6 (emphasis added).

We conclude that even though Regulus was not the owner or lessee of the *premises* it falls within the definition of "employer" because it is an "other person who is virtually the proprietor of the [logging] business there carried on." Regulus offers two reasons why it should not be considered the "proprietor" of the business. We reject both.

First, Regulus points out that it was engaged in the sawmill business rather than the logging business. It contends that, as a sawmill operator, it can be held only to a different set of standards applicable solely to the sawmill industry. This point is not well-taken. Regulus held timber rights on another's land. In order to profit from those rights, it either had to cut

---

**3.** Moreover, he alleged that Mr. Ebert, a Regulus representative, was well aware that Peone was working alone, out of sight and earshot from his co-workers at the time of the accident.

**4.** Nor does our review of the transcript of the hearing on the motion for summary judgment reveal that Regulus contested Peone's factual allegations.

and remove the timber itself, or it had to arrange for someone else to perform the logging. When Regulus made use of its timber rights by having Haynes harvest the timber, Regulus entered the business of logging itself. The fact that Regulus contracted for someone else to perform the actual logging does not insulate it from liability under the *Standards*. The definition of "employer" in section 1.6 specifically includes a corporation that utilizes an independent contractor.[5]

Second, Regulus contends that it cannot be considered the "employer" under the *Standards* because it did not exercise actual day-to-day supervision over the logging activities. The definition of "employer," however, does not require such daily control over the operation. Rather, the definition specifically extends to "proprietors" as well as "operators" of the business. The two are not synonymous. A proprietor does not necessarily have day-to-day control over the business. Instead, a proprietor is "one who has the legal right or exclusive title to something whether in possession or not." *Webster's Third New International Dictionary* 1819 (1971), *see also Black's Law Dictionary* 1384 (4th ed. 1951) ("One who has the legal right or exclusive title to anything."). There is no dispute that Regulus held the legal right to the timber on the land. We are unwilling to give the term "proprietor" new meaning, when it is construed in the context of the *Standards*. Similarly, we do not wish to inject into the definition of "employer" the requirement of day-to-day involvement in the operations, when no such requirement appears from the face of the *Standards*.

We find persuasive Peone's argument that the broad definition of "employer" in the *Standards* reflects a deliberate effort to involve more entities in the process of ensuring compliance with the *Standards*. By holding employers of independent contractors liable for the contractor's failure to comply with the *Standards*, the state has broadened the class of persons who have economic incentives to enforce the *Standards*.

## CONCLUSION

We hold that the district court erred in granting summary judgment in favor of Regulus. As an "employer" under the *Standards*, Regulus was obligated to ensure compliance with the procedures set forth therein. Accordingly, Regulus is liable for Roy Peone's injuries if Regulus failed to abide by the *Standards* and that failure was a proximate cause of Roy Peone's injuries. We reverse and remand to the district court to make the determinations. Janet Peone's claims for loss of consortium and any damages to her resulting from Roy Peone's injuries must also be considered on remand.

**REVERSED AND REMANDED.**

---

**5.** Section 1.6 of the *Standards* reads in full: **1.6 EMPLOYER**—"Employer," unless otherwise stated, includes any body of persons, corporate or unincorporated, public, or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workman there employed. If the employer is secured, it includes his surety so far as applicable.