Dennis G. EK, individually, and as Personal Representative of the Estate of Marjorie A. Ek, deceased, and Cheryl A. Ek, and Dennis C. Ek, Plaintiffs,

v.

Stanley Dean HERRINGTON, David Hill, and Dick Woodbury, Defendants.

Civ. No. 88–3074.

United States District Court, D. Idaho.

May 18, 1990.

Thomas A. Mitchell, John T. Mitchell, Coeur d'Alene, Idaho, Glen Schwartz, Schwartz, Friedin & Associates, Chicago, Ill., for plaintiffs.

Linda G. Tompkins, Lukins & Annis, P.S., Coeur d'Alene, Idaho, Eugene I. Annis, Lukins & Annis, P.S., Spokane, Wash., for defendant Stanley Dean Herrington.

Randall R. Adams, Quane, Smith, Howard & Hull, Coeur d'Alene, Idaho, for defendants David Hill and Dick Woodbury.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

RYAN, Chief Judge.

### I. FACTS & PROCEDURE

The above-entitled action arises out of a motor vehicle accident between an automobile driven by the plaintiffs' decedent and a tractor-trailer driven by the defendant Stanley Dean Herrington. The accident occurred on May 25, 1988, on State Highway 5, near Plummer, Idaho (Benewah County), when Defendant Herrington's tractor-trailer failed to negotiate a turn, crossed the center line, and dumped a load of timber onto the oncoming Ek vehicle. The plaintiff, Dennis G. Ek, brings this action, individually and in his capacity as Personal Representative of his decedent's estate. This court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship.

At the time of the accident, Herrington, an independent trucker, was employed by the defendant David Hill, a logging contractor. Hill had contracted with Jim Thornes to log the timber from a parcel of property owned by Helen Mullendorf. (Neither Thornes nor Mullendorf are parties to this action). The defendant Dick Woodbury was employed by Hill to "buck" the felled timber, i.e., cut the logs into 33-foot lengths.

Defendants Hill and Woodbury filed their Motion for Summary Judgment on September 11, 1989. Defendants maintain therein that the plaintiff has failed to overcome the general rule which provides that an employer is not liable for the negligence of an independent contractor. Accordingly, defendants claim that they are entitled to summary judgment. Plaintiffs filed a response to defendants' Motion for Summary

Judgment on October 5, 1989, and a supplemental response on October 30, 1989. Thereafter, defendants filed their reply brief on November 13, 1989. The matter came on for oral argument before this court on April 23, 1990. Accordingly, the matter is considered ripe for this court's review.[1]

### II. ANALYSIS

Plaintiffs concede that Defendant Herrington was an independent contractor employed by Defendant Hill. *See* Memorandum in Support of Response to Motion for Summary Judgment, filed Oct. 5, 1989, at 4, 15. As a result of this admission, and in order to successfully defend against the Motion for Summary Judgment, plaintiffs must overcome the general rule which insulates an employer of an independent contractor for physical harm caused to others by said independent contractor. *See* Restatement (Second) of Torts § 409 (1965).

Although cognizant of the general rule, plaintiffs maintain that the general rule of non-liability has been diluted by a number of exceptions. *See id.,* Reporter's Notes, comment b at 370. Plaintiffs contend that this case falls within one of those exceptions. Accordingly, plaintiffs argue that defendants' Motion for Summary Judgment must be denied.

Plaintiffs' argument is two-fold. Plaintiffs suggest that Hill is liable for his own independent acts of negligence as well as vicariously liable for Herrington's performance of a task which created a peculiar risk of physical harm. Specifically, plaintiffs maintain that Hill is *independently* liable for his own acts of negligence by reason of a breach of certain duties owed to the plaintiffs' decedent pursuant to statute and/or regulation. Plaintiffs assert, in the alternative, that even if Hill was under no statutory or regulatory duty to inspect, he may be *vicariously* liable by virtue of Restatement §§ 413, 414A, and/or 416. For

---

1. At the hearing, plaintiffs stipulated that Defendant Woodbury could be dismissed from this action. Plaintiffs, in addition, stipulated that their claims based upon negligent selection of an independent contractor could also be dismissed. The court's analysis of Defendant Hill's Motion for Summary Judgment will be limited accordingly. Plaintiffs also conceded that Counts IV and V of the amended complaint were duplicitous. As a result, the court will order that Count V be stricken from the pleadings.

clarity and for ease of analysis, the court will discuss each theory separately.

## A. *Independent Acts of Negligence*
### 1. Statutory or Regulatory Duty.

The issue according to the plaintiffs is, "[i]f the brakes were defective, can the duty of testing, or verification of the effectiveness of the brakes, be imposed upon anyone other than the owner or operator of the vehicle?" *Id.* at 3. Plaintiffs, relying upon Idaho Code § 49–832 and the Idaho Minimum Safety Standards and Practices for Logging, answers this question in the affirmative. Plaintiffs, in support of this conclusion (but without citation to authority), argue that Idaho Code § 49–832 must be read in conjunction with the Idaho Minimum Safety Standards and Practices for Logging (hereinafter referred to as the Logging Code), specifically Chapter L.1, Standard 25—Log Truck Transportation. According to the plaintiffs, these statutes and regulations taken together create a duty under which defendants may be held liable.

At the core of plaintiffs' complaint is a claimed breach of the duty to inspect. A duty to inspect is clearly provided for in Chapter L, subsection 1(b)(ii), of the Logging Code. Subsection 1(b)(ii), provides in pertinent part that "[a] brake test shall be made before and immediately after moving a vehicle. Any defects shall be eliminated before proceeding." Subsection 1(b)(ii) clearly imposes a duty on the *driver* of the truck, Herrington, to inspect the brakes before proceeding. This subsection, without more, however, does not appear to impose any duty on the employer, much less a duty on the employer to third parties.

Plaintiffs maintain that Chapter A of the Logging Code creates such a duty, i.e., Chapter A charges "employers" with a duty to inspect. According to the plaintiffs, subsection 1(f) of Chapter A defines an "employer" as "the owner or lessee of the premises, *or other person who is virtually the proprietor or operator of the business there carried on,* but who by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed." Memorandum in Support of Response to Motion for Summary Judgment, filed Oct. 5, 1989, at 3–4 (emphasis in original).

Plaintiffs cite the fairly recent Ninth Circuit opinion, *Peone v. Regulus Stud Mills, Inc.* 858 F.2d 550 (9th Cir.1988), in further support of this argument. The Ninth Circuit in *Peone* construed the definition of the term "employer" broadly. *See id.* at 555 (the definition of "employer" in the Logging Code represents a deliberate effort to involve more entities in the process of insuring compliance with the Code). The court in so doing reversed this court's award of summary judgment in favor of the defendant Regulus Stud Mills.

Plaintiffs, while recognizing that the facts in this case are distinguishable from those in *Peone,* argue that the principles contained therein create a duty to third parties. For the reasons more fully set forth immediately below, the court disagrees.

As a threshold matter, the court must consider whether the Logging Code was intended to apply to the instant case. Stated alternatively, the issue is whether plaintiffs' decedent was a member of the class of persons intended to be protected under the Logging Code. In making this determination, it is helpful to look to the enabling legislation.

The "enabling legislation," Idaho Code § 72–720, vests in the Idaho Industrial Commission the authority to "adopt reasonable minimum safety standards, and to make inspection in and about any place where workmen are employed." Idaho Code § 72–720 (1989). The court finds it noteworthy that the above-cited provision is buried in the heart of Title 72, Idaho's Workmen's Compensation and Related Laws—Industrial Commission. The context in which the enabling legislation is found tends to indicate that the safety standards are geared towards employee safety and workmen's compensation, not concerns over compensation to third parties injured at the hands of an "employer" or

independent contractor employed by such an employer.

That the Logging Code is limited to safety in the workplace or workmen's compensation law is further borne out in the text of the Logging Code itself. Chapter A of the Logging Code sets forth certain general provisions. Included within these general provisions is a section entitled "Interpretation and Application of the Code." *See* Idaho Minimum Safety Standards and Practices for Logging, Chapter A.2. Standard 2, at 2 (1989). Paragraph g of this section provides, "[i]t is recognized that a definite, positive safety code cannot anticipate all contingencies. The Commission and/or Department, after due notice and opportunity to be heard, may require additional standards and practices to insure *adequate safety at any place of any employment....*" *Id.* ¶ g at 3 (emphasis added). Chapter A.3. Standard 3—Employer's Responsibility, provides further that "[e]very employer shall do every other thing necessary within the framework of this Code *to protect the life and safety of employees.*" *Id.* ¶ b at 4 (emphasis added). Standard 3 provides further that "[n]o person shall fail or neglect to do everything necessary within the requirements of this Code *to protect the life and safety of employees.*" *Id.* ¶ g at 5 (emphasis added).

■ The above provisions make clear that the Logging Code is designed, (1) to insure adequate safety at any place of any employment; and (2) to protect the life and safety of employees. It is undisputed that plaintiffs' decedent was not an employee of the defendants. Because plaintiffs' decedent was not a member of the class of persons intended to be protected under the Logging Code, the defendant Hill had no duty and, hence, may not be held liable for the alleged tortious acts of the defendant Herrington. *See, e.g., Cooper v. Unimin Corp.,* 639 F.Supp. 1208 (D.Idaho 1986) (Idaho Minimum Safety Standards and Practices for Mining and Mineral Industry, by its terms, was intended to protect the safety and health of mine *employees* ).

**2. Restatement Section 424.**

Because the court finds that plaintiffs' decedent was not a member of the class of persons intended to be protected under the Logging Code, the defendant Hill had no duty and, hence, may not be held liable for the alleged tortious acts of the defendant Herrington under Restatement Section 424. *See* discussion *supra* at Part II(A)(1).

**B.  *Vicarious Liability***

**1.  Restatement Sections 413 and 416.**

■ Restatement Section 413 creates a duty in an employer to provide for the taking of precautions against dangers involved in work entrusted to contractors. Section 413 provides that:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, *a peculiar unreasonable risk of physical harm to others* unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (1965) (emphasis added). The comments to Section 413 make clear that it is not concerned with the taking of routine precautions of a kind which any careful contractor could reasonably be expected to take; routine precautions are the responsibility of the contractor. *Id.* comment b, at 385.

A number of illustrative examples are provided in the comments to Section 413. One example of a case where Section 413 does *not* apply is particularly germane: "[O]ne who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck ... is driven with defective brakes, some collision or other harm to persons on the highway is likely to occur. This Section has no reference to such a general anticipation of the possibili-

ty that the contractor may in some way be negligent." *Id.*

Moreover, the above comments make clear that the "peculiar risk" must be a risk that arises out of the work itself, not the manner in which it is performed. "Peculiar risk" is defined in the Reporter's Notes as "a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions." *Id.*, Reporter's Notes, comment d, at 397. Stated conversely, where it is the *manner* in which a subcontractor performs the work, as opposed to the work itself, that introduces the danger to an otherwise safe activity and workplace, the contractor is not vicariously liable for the negligence of his subcontractor. *See Nelson v. United States*, 639 F.2d 469, 474 (9th Cir.1980). If, however, the contractor/employer knows or has reason to know that the subcontractor is creating such a risk or danger, he is then required to take special precautions to reduce or eliminate the risk. Restatement (Second) of Torts § 413, Reporter's Notes, comment d, at 386.

As a threshold matter then, the court[2] must determine whether the hauling of timber on public highways is a type of work which is likely to create a *peculiar unreasonable risk unless special precautions are taken.* Admittedly, the hauling of timber creates a number of risks. The bulk of these risks, however, are not peculiar; the risks are simply common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community, i.e., the potential dangers resulting from faulty brakes, speeding or other moving violations, or overloaded vehicles. *See* Restatement (Second) of Torts § 416, Reporter's Notes, comment d, at 397.

The Restatement, however, has singled-out one risk as being "peculiar." *See id.* (if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability *for the contractor's failure to take special precautions to anchor them on his trucks* ).

■ Plaintiffs have alleged in the present case that Herrington, the independent contractor, "(h) [f]ailed to properly secure the load of trees and lumber he was transporting...." Amended Complaint and Demand for Jury Trial (8) Tort—Wrongful Death, filed Dec. 27, 1988, at 11. Hill, on the other hand, maintains that the accident was caused by a combination of faulty brakes and excessive speed, not whether the load was properly secured. The record before the court, particularly the deposition testimony of Cpl. Eric W. Mescher and the affidavit of Officer Steve Richardson, support the defendant's position. *See* Affidavit of Officer Steve Richardson, filed Nov. 13, 1989, at 2, ¶ 7. Accordingly, where, as here, it is the *manner* in which a subcontractor performed the work, as opposed to the work itself, that introduced the danger to an otherwise safe activity and workplace, Hill, the contractor, will not be held vicariously liable for the negligence of his subcontractor.

2. Restatement Section 414A.

Restatement Section 414A provides that:
A possessor of land who has employed or permitted an independent contractor to do work on the land, and knows or has reason to know that the activities of the contractor or conditions created by him involve an unreasonable risk of physical harm to those outside of the land, is subject to liability to them for such harm if he fails to exercise reasonable care to protect them against it.

Restatement (Second) of Torts § 414A (1965).

**2.** The Idaho Court of Appeals in *Fagundes v. State*, 116 Idaho 173, 774 P.2d 343 (Ct.App. 1989), held, if only implicitly, that whether the work creates a peculiar unreasonable risk is a legal question for the court to decide. *But see, id.* at 176–77, 774 P.2d at 348, Walters, C.J., dissenting.

In the instant case, logs were cleared by Hill and Woodbury from property owned by Helen Mullendorf. Conceivably, this logging operation could have created risks to persons on adjacent parcels or, if the Mullendorf property was sufficiently close to the highway, to persons traveling thereon. A close reading of Section 414A and the illustrations thereto, convinces the court that this section does not apply. *See id.* at 389–90, illustration 3. In addition, because there is no question concerning the issue of Hill's duty to hire competent subcontractors, he may assume, until he has reason to know the contrary, that the work is being done properly, and that there is no risk. *See id.*, comment b. Accordingly, the court finds that Section 414A provides no basis for holding Hill vicariously liable.

### III. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED plaintiffs' claims based upon negligent selection of an independent contractor should be, and are hereby DISMISSED.

IT IS FURTHER ORDERED that Count V of plaintiffs' amended complaint should be, and is hereby, STRICKEN pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendants Hill and Woodbury's Motion for Summary Judgment should be, and is hereby, GRANTED.