774 P.2d 343

**Gloria J. FAGUNDES, Individually and As Guardian Ad Litem for Jason L. Fagundes and Anthony F. Fagundes, Plaintiffs–Appellants,**

v.

**STATE of Idaho, Defendant–Respondent.**

**No. 17545.**

Court of Appeals of Idaho.

May 19, 1989.

Bradley H. Hall and Donald Lojek (Lojek & Hall, Ctd.), Boise, for plaintiffs-appellants.

Jim Jones, Atty. Gen., argued by Robert T. Wetherell and Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

HART, Judge Pro Tem.

This is a wrongful death case. Frank Fagundes died shortly after a helicopter he had been piloting crashed. Fagundes was an employee of Pinebelt Helicopters, Inc. The State of Idaho had hired Pinebelt to fly state employees over wilderness areas so that the state employees could count game animals. There are two issues presented in this case. The first is whether the state owed a duty of care to Fagundes, an employee of independent contractor Pinebelt, due to the control the state exercised over the work to be performed. The second issue is whether the state is subject to vicarious liability because Pinebelt did not use reasonable care to protect Fagundes from a peculiar unreasonable risk of physical harm. The district court held that the state did not owe a duty to Fagundes and granted summary judgment in favor of the state. For the reasons explained below, we affirm the judgment of the district court.

The facts of this case are as follows. The state hired Pinebelt Helicopters, Inc. to fly state employees over wilderness areas so that the state employees could count animals. The contract between the state and Pinebelt required Pinebelt to provide helicopters and experienced pilots. The contract specifically provided that safety was the pilot's responsibility and that Pinebelt would use due diligence in preventing accidents.

On April 17, 1987 the helicopter carrying Fagundes and two state employees crashed in a wilderness area. The crash occurred at approximately 7:00 p.m. in a steep mountainous canyon. Fagundes was severely injured in the crash. He died in the early hours of the day after the crash. For purposes of this summary judgment it is accepted that the crash was caused by equipment malfunction and that there was no piloting error.

The helicopter did not have a homing beacon. If a homing beacon had been on board, rescuers might have been able to locate the downed machine earlier than they did. Although the helicopter had a radio and the state employees had a hand held radio, the crash survivors were unable to communicate with anyone beyond the canyon in which they had fallen. This inability to initiate long distance communication hampered rescue efforts. The helicopter did not carry medical supplies. If medical supplies had been available at the crash site it is possible that Fagundes' life could have been saved. A third state employee stayed at the helicopter's base camp. This third employee attempted to contact the helicopter for several hours after the crash, without success. The next day this third employee initiated the rescue that eventually saved the two surviving men. If the rescue attempt had begun on the day of the crash it is possible Fagundes could have been saved.

Fagundes' survivors filed suit alleging the state was negligent in not requiring that the helicopter contain a homing beacon, in not requiring that radio communications be workable in the event of a crash, in not providing adequate medical supplies to save Fagundes and in not starting the rescue operations earlier. Fagundes' survivors did not allege that the state was responsible for the equipment malfunction that caused the crash. The district court granted summary judgment in favor of the state, holding that under *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102 (1987), the state owed no duty of care to Fagundes.

The rules governing summary judgments are well known. Summary judgment is appropriate only when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c). Controverted facts are viewed in favor of the party resisting a motion for summary judgment. Where, as here, a jury has been requested, the non-moving party is entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Whitlock v. Haney Seed Company*, 110 Idaho 347, 715 P.2d 1017 (Ct.App.1986).

**I**

■ On appeal, Fagundes' survivors argue that *Peone v. Regulus Stud Mills, Inc., supra,* is not binding precedent because it did not apply RESTATEMENT (SECOND) OF TORTS § 414 (1965) (hereafter, RESTATEMENT) to the facts. To that extent we agree that *Peone* is distinguishable.

Fagundes' survivors assert that material issues of fact exist as to whether RESTATEMENT § 414 is applicable and created a duty for the state. Section 414 reads:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

It is undisputed that the state entrusted the work of flying state employees over wilderness areas to an independent contractor, Pinebelt. It is also undisputed that the state retained control over parts of the work. The contract between the state and Pinebelt included terms found in the state's invitation to bid. The invitation stated that state employees would direct where helicopters would be flown. The invitation also required that certain equipment must be included on every helicopter. It is not disputed that Fagundes suffered physical harm. What is disputed is the extent of the state's duty of reasonable care to Fagundes. If the state did have such a duty and Fagundes' death was caused by the state's failure to exercise its control with reasonable care, the state is subject to liability.

The invitation to bid contained different sections which, it has been argued, conflicted with one another. One section, entitled "safety requirements" placed the burden on the independent contractor and the pilot to maintain the safety of the helicopter and its occupants. Thus it can be argued that the state specifically declined to exercise control over safety measures associated with performance of the contract. A different section, entitled "equipment requirements" listed equipment the helicopter must include. The list included a fire extinguisher, flying instruments, a load release attachment, seat belts and shoulder harnesses for all occupants and helmets for all occupants. The state did exercise control over at least one aspect of safety by requiring that equipment which improved safety be included on all helicopters. Since the required equipment increased the safety of all occupants of a helicopter, including the pilot, it is clear the state exercised some control over Fagundes' safety.

We are not persuaded that the "safety requirements" and "equipment requirements" sections of the contract conflict with one another. The "safety requirements" section eliminates any contractual duty of the state regarding safety. The "equipment requirements" section does not affect the state's duty of reasonable care, it merely expressed the state's contractual control over equipment having an effect on safety. If a source of the state's duty to Fagundes is to be found, it must be found outside the contract itself.

Fagundes' survivors contend that the state's negligent conduct consisted of failures to act rather than acts. The RESTATEMENT § 284(b) recognizes that

> [n]egligent conduct may be ... a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.

However, RESTATEMENT § 314 states that

> [t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

According to the RESTATEMENT then, even if the state realized or should have realized that it was necessary for the state to require that Pinebelt's helicopters contain homing beacons, powerful radio transmitters, and medical supplies for the aid or protection of Fagundes, it was not therefore under a duty to require such equipment. Similarly, even if the state realized or should have realized that Fagundes

needed to be rescued on the day of the crash, it was not therefore under a duty to rescue him.

Fagundes' survivors recognize the applicability of the general common law rule that one is not under a duty to rescue another. They argue, however, that once the state exercised control over Fagundes' safety by requiring the safety equipment listed in the invitation to bid, the state assumed the duty of requiring all the safety equipment which might have saved Fagundes. In this regard, RESTATEMENT § 323 says,

[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Arguably, the state undertook aid to Fagundes by requiring certain safety equipment. Fagundes' survivors have not alleged however that the required safety equipment was missing or malfunctioned and caused Fagundes physical harm. Thus, Fagundes' survivors have not alleged that the state's undertaking of aid caused Fagundes harm.

Comment c to RESTATEMENT § 323 reads, in part, as follows:

The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in

a worse position than he was in before the actor attempted to aid him.

Fagundes' survivors have not alleged that the equipment required by the invitation to bid put Fagundes in a worse position than he would have been in without the equipment. The state was free to require some safety equipment without incurring a duty to require all potentially helpful safety equipment.

## II

▮ In addition to the negligence allegations discussed above, Fagundes' survivors also asserted that the state was vicariously liable because Pinebelt failed to take reasonable precautions to avoid the risks associated with flying a helicopter over wilderness areas. In a jurisdiction in which both RESTATEMENT §§ 413 and 416 are applicable, one who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them if reasonable care is not taken to provide for the taking of such precautions. If the contract does not provide that the independent contractor is responsible for the precautions, the employer is directly at fault and liable due to RESTATEMENT § 413. As noted above, the contract here between the state and Pinebelt specifically allocated the responsibility for safety to Pinebelt and Fagundes. Due to the "safety requirements" section of the contract, the state is not subject to liability under RESTATEMENT § 413. If the contract does provide that the independent contractor is responsible for the precautions, the employer can be vicariously at fault and liable due to RESTATEMENT § 416.[1]

In *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102 (1987), our Supreme Court answered a certified ques-

---

1. RESTATEMENT § 416 reads:
One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to

liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

tion presented by the United States Court of Appeals for the Ninth Circuit. The inquiry presented was the narrow question of whether RESTATEMENT §§ 413 and 416 were consistent with Idaho law and created a duty of reasonable care from an employer of an independent contractor to an employee of an independent contractor. While the Court did not explicitly adopt the two sections of the RESTATEMENT, neither did the Court explicitly reject the sections as inapplicable law in Idaho. We therefore will apply the two sections of the RESTATEMENT to this case and determine whether those sections raise any issues of material fact.

In *Peone*, the Court determined that the party which had hired an independent contractor to harvest timber did not owe a duty of care to an employee of the independent contractor. The Court limited its inquiry—as to the sources of a duty—to RESTATEMENT §§ 413 and 416. The Court gave two reasons for its holding. First, the Court determined it was unfair to expose a party hiring an independent contractor to greater liability than a party which hired its own employees. The party hiring an independent contractor would be subject to greater liability than a party hiring its own employees because a party hiring its own employees would not be liable in tort for the injuries suffered by the employee beyond liability under the worker's compensation laws. Second, the Court determined that the risk actually involved in the case was not a special risk, peculiar to the work to be done, but was instead common to timber harvesting. Because the risk was not special, the Court determined that the independent contractor was in a better position to recognize and avoid the risk than was the party which had hired the independent contractor.

Regarding the first reason, the Supreme Court commented as follows:

An argument advanced by courts which impose liability is that the third party employer should not be able to escape liability by simply contracting with an independent entity. However, the reverse should apply too. The employer should not be exposed to greater liability by contracting with an independent entity. If an employee of the owner was injured, the employee would be limited to worker's compensation benefits.... Thus to allow the [independent contractor's] employee to recover tort damages places the third party owner at greater risk than if his own servants performed the task [citations omitted].

*Peone, Id.* at 378, 744 P.2d at 106.

This case is controlled by *Peone, supra,* as to employer liability under RESTATEMENT §§ 413 and 416. The *Peone* decision's reasons for the employer's non-liability to the employees of the independent contractor apply with equal force here. It is not fair to impose potentially greater liability upon a party merely because that party has chosen to hire an independent contractor instead of an employee.

We are also convinced that the work involved in this case was not of the type that the state should have recognized would be likely to create a peculiar risk of physical harm. Whether work creates a peculiar risk of physical harm is not the same question as whether work is dangerous. Instead, it is a question of whether the risk is commonly encountered. *Peone, supra* (the work involved, falling a dead tree, is dangerous but it is commonly encountered). *See also Bosak v. Hutchinson,* 422 Mich. 712, 375 N.W.2d 333 (1985) (assembly of crane at construction site "fairly routine" hence risk of harm during assembly not "peculiar"). Pinebelt, the independent contractor supplying the helicopter and pilot, was in a better position than was the state to assess the risks attendant to a helicopter's crashing in a wilderness area. Pinebelt was able to consider the risks and the necessary costs to insure against them when negotiating a contract price. The state, as employer of Pinebelt, did not have special knowledge about the special risks of helicopters crashing in wilderness areas.

Helicopter flying over wilderness areas, by its nature, involves the risks attendant with a helicopter's crashing in the wilderness area. The peculiar risk doctrine does

not encompass taking precautions against ordinary dangers which arise in the course of work. Therefore, RESTATEMENT § 416 is not applicable to this case.

Accordingly, the summary judgment of the district court in favor of the state is affirmed. Costs to respondent; no fees allowed.

SWANSTROM, J., concurs.

WALTERS, Chief Judge, concurring and dissenting.

I concur with that portion of the majority's opinion discussing RESTATEMENT (SECOND) OF TORTS §§ 413 and 414 (RESTATEMENT). I dissent however as to the portion of the opinion concerning whether a peculiar risk of physical harm should have been recognized by the state. I believe this is a factual question which should be resolved by a jury. Since a factual question remains to be decided, I would vacate the summary judgment and remand the case for trial.

RESTATEMENT § 413 comment b explains the concept of peculiar risk as follows:

> This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions. *"Peculiar" does not mean that the risk must be one which is abnormal to the type of work to be done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.* [Emphasis added.]

My reading of the RESTATEMENT leads me to believe that "peculiar" risks are risks which fit somewhere in a continuum between "normal" risks (e.g., driving an automobile) and "abnormal" risks (e.g., blasting explosives in a city, dropping an object from an aircraft). The RESTATEMENT takes the position that some risks are so common that they are normal as a matter of law. The RESTATEMENT also takes the position that the question of whether an activity presents abnormally dangerous risks is a legal question. RESTATEMENT § 520, comment 1. While the RESTATEMENT § 520A lists risks to persons or property on the ground from falling aircraft as being abnormally dangerous, the RESTATEMENT specifically says that the risks to the crew of an aircraft from the aircraft's falling are not abnormally dangerous. RESTATEMENT § 520A, comment e.

The RESTATEMENT does not take a position on the question of whether peculiar risk determinations are legal or factual. There is a split of authority on this issue. Cases holding that the question is a legal question for the court to decide are: *Bosak v. Hutchinson,* 422 Mich. 712, 375 N.W.2d 333 (1985); *Kemp v. Bechtel Construction Co.,* 221 Mont. 519, 720 P.2d 270 (1986) (but dissent takes opposite position); *Teichert & Son, Inc. v. Superior Court,* 179 Cal. App.3d 657, 225 Cal.Rptr. 10 (3d Dist.1986) (failure to exercise due care in the operation of a motor vehicle) and *Jimenez v. Pacific Western Const. Co., Inc.,* 185 Cal. App.3d 102, 229 Cal.Rptr. 575 (5th Dist., 1986) (particular risk existed as a matter of law based on precedent covering same facts). Cases holding that the question is a factual question for a jury to decide are: *Donovan v. General Motors,* 762 F.2d 701 (8th Cir.1985); *Wilson v. Good Humor Corp.,* 757 F.2d 1293 (D.C.Cir., 1985); *Caudel v. East Bay Municipal Utility Dist.,* 165 Cal.App.3d 1, 211 Cal.Rptr. 222 (1st Dist., 1985) and *Elliott v. Public Service Co. of N.H.,* 128 N.H. 676, 517 A.2d 1185 (1986). Other courts have held that the question is ordinarily a factual question suitable for a jury, but if reasonable minds could not differ, the court should decide, as a matter of law. *Hofstetter v. Union Electric Co.,* 724 S.W.2d 527 (Mo.Ct.App.1986); *Marshall v. Southern Pennsylvania*

*Transp. Auth.,* 587 F.Supp. 258 (E.D.Penn. 1984).

I recognize that our Supreme Court in *Peone* did hold, as a matter of law, that falling dead trees does not present a peculiar risk. I do not believe that this single determination, applicable directly to a particular type of work, should be applied across the board to all types of work being analyzed.

In *Donovan v. General Motors,* 762 F.2d 701 (8th Cir.1985), the Eighth Circuit Court of Appeals illustrated why the determination of whether particular work was inherently dangerous [1] should be done by a jury. That case involved suit by an employee of an independent contractor against the employer of the contractor for damages the employee suffered when he fell 28 feet during the construction of a building. The trial court had ruled, as a matter of law, that constructing a building 28 feet tall was not inherently dangerous. In reversing the trial court's judgment, the Court of Appeals held that the inquiry should focus on the specific work involved. The Court of Appeals ruled that the fact finder should determine whether working on a scaffold 28 feet above ground was inherently dangerous. The Court of Appeals determined that working 200 feet above the ground could be inherently dangerous. On the other hand, working one foot off the ground probably would not be inherently dangerous. The Court of Appeals concluded that the demarcation necessary to determine when work was inherently dangerous was for the jury. The court refused to draw that line at 28 feet.

I find the Eighth Circuit's reasoning persuasive and applicable here. The risks to a helicopter pilot associated with flying over flat, sparsely populated land in good weather might be "normal." On the other hand, the risks to a helicopter pilot associated with flying over mountainous, forested, and uninhabited land are markedly greater and might be "peculiar." By changing the

facts slightly, by focusing on the risks to persons on the ground instead of the pilot, the risks become "abnormally dangerous." RESTATEMENT § 520A, comment e. While the facts of this case make it clear that the pilot did not face abnormally dangerous risks, I cannot say whether the risks he faced were on the side of the line demarcating normal from peculiar risks. I believe this is a determination better suited to a jury than to a court on summary judgment.

Since a material factual issue remains to be decided, summary judgment was improper. I would vacate the judgment and remand the case for a trial on the factual issues.

---

1. Although the Eighth Circuit used the term "inherently dangerous" instead of "peculiar risk" the analysis is applicable here. The Eighth Circuit was determining whether a jury question was presented by application of a Missouri vari-

ation of the peculiar risk rule of RESTATEMENT § 416.

