Robert J. KANE, Jr., and Beverly Kane, Plaintiffs–Appellants,

v.

J.R. SIMPLOT COMPANY, a Nevada Corporation, Defendant–Appellee.

No. 94–4150.

United States Court of Appeals, Tenth Circuit.

July 13, 1995.

Peter C. Collins (John W. Holt with him on the brief), of Winder & Haslam, P.C., Salt Lake City, UT, for plaintiffs-appellants.

Robert D. Lewis (David W. Cantrill with him on the brief), of Cantrill, Skinner, Sullivan & King, Boise, ID, for defendant-appellee, J.R. Simplot Co.

Before ANDERSON, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

The plaintiff-appellant, Robert J. Kane, Jr., was injured in a fall from a scaffolding platform on July 5, 1991, in Burley, Idaho. At the time of the incident, he was painting a grain silo owned by the defendant-appellee, J.R. Simplot Company, hereafter referred to as "Simplot."

The case comes before us following the trial court's grant of summary judgment in favor of the defendant.

The basic relevant facts do not appear to be in dispute. Simplot contracted with Bruce Boyd, an independent contractor, (hereafter referred to as Boyd) to paint the exterior of several silos and structures at its Union Seed Group Plant in Burley, Idaho. Under the contract terms, Boyd agreed to "Conform to all Safety Standards ..." in connection with the work. Appendix, Applt. Brief p. 317.[1] Boyd operated his own business as "Bruce's Industrial Painting" while his brother, Dennis Boyd, operated a separate company known as "Painting Unlimited." At the request of Union Seed, Painting Unlimited undertook to warrant and guarantee the job.

Pursuant to an agreement between Boyd and his company and Dennis Boyd and his company, Painting Unlimited assumed all responsibilities under the contract and provided all materials, equipment and paint, all workmen and laborers, and provided general liability and worker's compensation coverage for the job. In return, Painting Unlimited agreed to pay Boyd 10% of the contract price as a finder's fee and to hire Boyd as project

---

*The Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

1. Three separate contracts were written on the job covering separate structures on the property, such as the main elevator, four feed bins, the masonry surface of three silo structures, the main office building, a seed warehouse, etc.

foreman for the job. Appendix, Applt. Brief, pp. 276–277.

In early June, 1991, Boyd advertised for and hired plaintiff Kane to work as a high-rise painter on the Burley job. "He was hired specifically to work with me (Boyd) on the swing stage." Appendix Applt. Brief, p. 282. For this job, Boyd rented "swing stage" scaffolding, together with necessary cords and lines from defendant Savage Scaffold and Equipment, Inc., not a party to this appeal.[2]

Boyd instructed Kane generally on how to anchor the swing stage by lines to the buildings to bear the weight while the painting was done. Boyd was in charge of the painting and the scaffolding work. Boyd told Kane what to do. Boyd and plaintiff Kane were employees of "Painting Unlimited."

About one week before the accident, Boyd tied the cable line of the scaffolding to a catwalk by just "wrapping it around and shackling it to the thing ... *It wasn't intended as an anchor*". Boyd never intended the catwalk to be a weight-bearing anchor. Boyd tied the cable there temporarily only to keep the line up.

On July 4 or 5, Boyd told Kane to go to the roof of the silo and to rig the swing stage scaffolding for that day's painting work. The swing stage had been used before on the job and had been moved from time to time as needed in the course of painting various silos and buildings at the site. Kane had "helped Bruce move it every time from day one," with Bruce "always showing me how we tied." Kane depo. Appendix p. 245.

At the time of the accident, one side of the swing stage scaffolding was anchored by line to steel pipes on the roof of the silo, and the other side was attached to the catwalk. Kane secured one end of the scaffold line to two round steel pipes on the roof. As previously noted, Boyd had earlier wrapped the other line on the catwalk and Kane left it attached there, with the catwalk as an anchor, apparently not realizing the danger. On the two prior times that Kane had anchored the swing stage for work, the stage had not been hooked to the catwalk because the catwalk was not in the right position to use for the work they were doing.[3]

Simplot did not own the swing stage scaffolding. No employee of Simplot erected or rigged the scaffold. No Simplot employees were present on the premises on July 4 or July 5, when the accident occurred.

All who worked on the scaffold were required to use a safety belt, separately attached, in order to protect the worker in case the scaffold failed. Kane's employer, Painting Unlimited, had written safety guidelines which required use of such safety belts as well as daily checking of rigging.[4] Boyd, foreman on the job, testified in deposition that when work was finished on the job each evening, the swing stage was lowered to the ground, and the next morning a safety check of the rigging was made before work began again:

Q. And then in the morning tell me the procedure to get the swing stage started. What would you do?

A. One of the safety procedures is you check your rigging, so a person is sent to the top to check the rigging, make sure it's

---

**2.** The trial court granted summary judgment to defendant Simplot but denied Savage's motion for summary judgment. The ruling for Simplot was certified as a final appealable order under Rule 54(b). Plaintiffs' claims against Savage Scaffolding are still pending in the district court and are not an issue in this appeal.

**3.** See Kane deposition, Appendix Applt. Brief, pp. 248–251.

Kane explained that when they were doing their "paint runs", the swing stage was anchored half on the "round silo" and half on the "square silo," each side being anchored to round steel pipes on the silos. When painting the letters "WSI," the swing stage was moved "exactly on

the square silo itself, so it would be centered for the lettering." Kane was certain that this was the first time that the catwalk had actually been used as an anchor for the swing stage.

**4.** The written "Job Safety" rules of Painting Unlimited included the following rules regarding "Rigging & Personal Safety": (Appendix, Applt. Brief, p. 274)

A. When performing high work always wear safety belts with rope grabs. Learn and use necessary safe knots for tieing off safety lines.

\* \* \* \* \* \*

G. Checking rigging each day before using.

okay, check your equipment, make sure everything is operating okay, check your safety line, your cable, J clamps. Those are part of the procedures. (Appendix, Applt. brief, p. 286).

At the time of the accident, Kane and Boyd were working together on the swing stage. Just prior to the accident, Kane disconnected his safety belt from the safety line in order to move about. The accident occurred when the catwalk pulled away from the roof causing one side of the scaffold to fall. Both Kane and Boyd sustained injuries in the fall. Kane received worker's compensation benefits through his employer, "Painting Unlimited."

The parties agree that Idaho law applies in this action. In pursuing claims against Simplot, plaintiffs relied on several theories of recovery: first, general landowner/premises liability under Idaho law; second, direct liability under §§ 413 and 416 of the Restatement (Second) of Torts, the "peculiar risk doctrine"; third, vicarious liability, based on the negligence of the painting contractor, under § 416, and § 422, of the Restatement (Second), which involves "unsafe structures," and various alleged violations of federal OSHA regulations.[5]

The trial court granted summary judgment in favor of Simplot as to each of plaintiffs' claims.

In this appeal, plaintiffs contend that the court erred in granting summary judgment on the premises liability claim because the deposition testimony of various witnesses, together with reasonable inferences to be drawn from that testimony, presents an abundance of material fact questions. In addition, plaintiffs contend that the court erred in ruling that certain sections of the Restatement (Second) of Torts did not apply to the circumstances of this case, and that the court further erred in finding that Simplot could have no liability for the alleged violation of OSHA safety regulations.

Summary judgment is appropriate when there is no genuine issue as to any material fact so that the moving party is entitled to judgment as a matter of law. Following our review of this case *de novo*, under *Shute v. Moon Lake Elec. Ass'n, Inc.*, 899 F.2d 999 (10th Cir.1990), we find that judgment for defendant was properly entered in the case, and the trial court's rulings should be affirmed.

■ Idaho law recognizes that a landowner owes a general duty of reasonable care to invitees who come upon the premises. *Keller v. Holiday Inns, Inc.*, 107 Idaho 593, 595, 691 P.2d 1208, 1210 (1984); *Ryals v. Broadbent Development Co.*, 98 Idaho 392, 565 P.2d 982 (1977). The Idaho court has recognized that this duty may apply even for obvious and open dangers. In *Ryals*, the court approved a jury instruction taken almost verbatim from the Restatement (Second) of Torts, § 343A:

> The owner or operator of premises may be liable for physical injuries to an invitee proximately caused by the unsafe or dangerous condition of his premises even though the danger is obvious and known to such invitee if the owner or operator of the premises had reason to expect that the invitee would proceed to encounter the obvious danger because to a reasonable man in his position the advantages of doing so ... would outweigh the apparent risk. (98 Idaho at 396, 565 P.2d at 986)

■ The district court properly granted judgment against plaintiff on the claim based on traditional premises liability upon the ground that "there was no viable evidence that Simplot was negligent in failing to keep its premises in a reasonably safe condition or that any act or omission on its part caused plaintiff's injuries." The catwalk itself was in a reasonably safe condition when used for its intended purpose. Under the provisions of the contract with Simplot, the painting contractors undertook to supply material, labor

---

**5.** Appellants contended at the district court level that application of other Restatement sections, namely 424 and 427 of the Restatement (Second) of Torts, should be applicable to this case. While they state they no longer pursue these claims on appeal, they urge the court to "recognize" their applicability under Idaho law and to reverse the district court's determination that they may not pursue claims under those sections.

We decline to determine issues which are not briefed or argued on appeal.

and equipment for the job, and to "conform to all safety standards" in performing the contract. The catwalk failed only because it was improperly used as an anchor for the swing stage. Boyd, the contractor who negotiated the contract with Simplot and who was the foreman in charge of the job, admittedly knew that the catwalk was not a proper anchor; and he did not intend that it be used as such. Whether or not Boyd warned Kane about the catwalk, the fact remains that the contractor directed Kane to anchor the rigging; and Kane improperly anchored it to the catwalk. There simply was no evidence that Simplot failed to maintain its premises in a safe condition or that any act of Simplot caused injury to Kane.

■ As to claims asserted under the "peculiar risk doctrine" of the Restatement (Second) of Torts, §§ 413 and 416, the trial court properly found that employees of independent contractors are not included within the class of "others" protected by the doctrine.[6]

The Idaho Supreme Court has ruled that employees of independent contractors are not included within the class of "others" as defined in §§ 413 and 416 of the Restatement (Second) of Torts. *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102 (1987).[7] In *Peone*, a sawmill operator contracted with a logging contractor to remove timber from land on which it held timber rights and to deliver that timber to the sawmill. An employee of the contractor was injured by a falling dead tree, or "snag," while he was on the job. The Ninth Circuit Court of Appeals certified questions to the Idaho Supreme Court on whether an employer of an independent contractor is liable to an employee of that contractor under either § 413 or § 416 of the Restatement (Second) of Torts. In determining the issue, the Idaho court considered cases from jurisdictions which impose liability (California, Iowa, Michigan, North Dakota, and the District of Columbia), and those jurisdictions which have held that employees of independent contractors cannot recover from the party employing the contractor (Kentucky, Washington, Indiana, Massachusetts, Nevada and Minnesota). In ruling that the contractor's employees would not be covered under the Restatement sections, the Idaho court gave weight to its determination that it would be unfair to allow the employee of an independent contractor, entitled to recover limited worker's compensation benefits from the contractor, to then recover additional tort damages from the property owner. The court reasoned in this manner:

> Generally, workmen's compensation laws have been enacted to abrogate the common law right to sue the employer in tort but in return, the employee has been given the right to swift and sure, though limited compensation ... To the extent that workmen's compensation is the preferred remedy for occupational injuries, it does appear anomalous and fortuitous to allow an employee to recover in tort from a third party owner when the accident arises out of and in the course of employment. In other words, a third party owner should not be exposed to greater liability by employing an independent contractor. (113 Idaho at 378, 744 P.2d at 106)

**6.** Section 413 of the Restatement provides that:
One who employs an independent contractor to do work which the employer should recognize is likely to create, during its progress, a *peculiar unreasonable risk* of physical harm *to others* unless special precautions are taken is subject to liability for physical harm caused to them by the absence of such precautions if the employer
(a) fails to provide in the contract that the contractor shall take such precautions, or
(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions. (Emphasis supplied)
Section 416 of the Restatement provides:
One who employs an independent contractor to do work which the employer should recog-

nize as likely to create, during its progress, a *peculiar risk* of physical harm *to others* unless special precautions are taken, is subject to liability for physical harm caused to them *by the failure of the contractor* to exercise reasonable care to take such precautions even though the employer has provided for such precautions in the contract or otherwise. (Emphasis supplied)
As previously noted, the contract in question provided that the contractor would follow "all Safety Regulations."

**7.** Because § 427 of the Restatement is similar to § 416, the trial court ruled that the exclusion of employees of independent contractors from the class of "others" extends to that section as well.

The *Peone* court noted that while there are exceptions to this policy under both §§ 413 and 416, involving the "peculiar risk" doctrine, the risk involved was the danger of a falling dead tree, which is not a "special risk, peculiar to the work to be done ..." The Idaho court found that the logging contractor was in a better position than the sawmill operator to assess this risk and its necessary costs to insure against them when negotiating a contract price, so no exception should be made for common dangers which arise in the contractor's course of work:

> We conclude that Haynes Logging is in a better position to reduce the risks of injury from falling snags. A logging contractor has more knowledge and expertise than a sawmill operator with respect to the dangers that normally arise during the course of the contractor's normal work routine. A logging operation, by its nature, involves the risk of falling snags to the employees of the logging operation. The peculiar risk doctrine does not encompass taking precautions against ordinary dangers which arise in the course of the work. Therefore, neither § 413 nor § 416 of the *Restatement (Second) of Torts* is applicable to this case. (113 Idaho at 379, 744 P.2d at p. 107)

Appellant contends that the *Peone* case is not determinative of the question of liability in this case, because there the contracted work was not to be done upon the sawmill premises. We do not find this argument persuasive since the sawmill proprietor contracted for work to be done upon property in which it held a recognized ownership interest. The *Peone* court carefully weighed the opposing interests considered determinative by many jurisdictions, and ultimately found that the logging contractor, with superior knowledge and expertise, should bear the risks normally arising in the ordinary conduct of the work. In following the reasoning found in the *Peone* case, the trial court here properly found that neither § 413 nor § 416 imposed liability upon Simplot and that, while working from a scaffold is dangerous, the risk of falling from a scaffold is a risk commonly encountered and therefore not a "peculiar risk" for purpose of the Restatement. As to any claim under § 422 of the Restatement (Second) pertaining to "unsafe structures," similar reasoning applies for there was no evidence of an unsafe condition of any structure and no evidence that Simplot controlled the manner in which the contractor performed the work.[8] See Comment c. to § 414 of the Restatement (Second) and *Hill v. Pacific Power & Light Co.,* 765 P.2d 1348 (Wyoming 1988) (Owner of premises not liable to worker for independent contractor injured in fall from scaffolding when evidence failed to show that owner retained right to direct independent contractor's construction or later modification of scaffolding that caused worker's injury.) See also *Fagundes v. State,* 116 Idaho 173, 774 P.2d 343 (App. 1989), where the Idaho court found that the reasoning employed in the *Peone* decision applied equally to § 414 of the Restatement (Second) of Torts.[9] In *Fagundes,* the state of Idaho hired an independent contractor, Pinebelt Helicopters, to fly state employees over wilderness areas. During a flight, Fagundes, an employee of Pinebelt, crashed in a remote area and died before a rescue team reached the scene. His survivors claimed that the state was negligent in not requiring that the helicopter contain a homing beacon and workable communications equipment as rescue aids. The court found the case to be controlled by *Peone* as the reasons for non-

---

8. Section 422 of the Restatement, pertaining to unsafe structures, provides:

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands *to others* on or outside the land for physical harm caused to them by the unsafe condition of the structure
(a) while the possessor has retained possession of the land during the progress of the work, or
(b) after he has resumed possession of the land upon its completion. (Emphasis supplied)

9. Section 414 provides:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm *to others* for whose safety the employer owes a duty to exercise reasonable care which is caused by his failure to exercise his control with reasonable care. (Emphasis supplied)

liability to the employees of an independent contractor applied with equal force. In finding that there was no "peculiar risk" involved in the contractor's undertaking, the court stated: (116 Idaho at p. 177–78, 774 P.2d at p. 347–48):

> It is not fair to impose potentially greater liability upon a party merely because that party has chosen to hire an independent contractor instead of an employee.

> We are also convinced that the work involved in this case was not of the type that the state should have recognized would be likely to create a peculiar risk of physical harm. Whether work creates a peculiar risk of physical harm is not the same question as whether work is dangerous. Instead, it is a question of whether the risk is commonly encountered ... Pinebelt, the independent contractor supplying the helicopter and pilot, was in a better position than was the state to assess the risks attendant to a helicopter's crashing in a wilderness area. Pinebelt was able to consider the risks and the necessary costs to insure against them when negotiating a contract price. The state, as employer of Pinebelt, did not have special knowledge about the special risks of helicopters crashing in wilderness areas ... The peculiar risk doctrine does not encompass taking precautions against ordinary dangers which arise in the course of the work.

There are, of course, special risks involved in high-rise painting jobs involving the use of scaffolds, but Kane's employer, the painting contractor, was in a better position to assess the risks and to insure against them than was Simplot, a company that operated an agricultural complex in Burley, Idaho.

■ There remains the question of Simplot's possible liability under federal OSHA regulations. Under Idaho law, a violation of a safety statute or regulation can be negligence *per se*. *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986). In this respect, plaintiffs rely on various regulations of OSHA and American National Standards Institute as theories of liability.

The trial court concluded that Simplot had no duty to enforce OSHA regulations for work over which it had no control. The court recognized that Simplot had a general duty under 29 U.S.C. § 654(a)(1) to protect plaintiff from recognized hazards but found that there was no viable evidence that Simplot violated that duty. As to § 654(a)(2), which states that each employer shall comply with OSHA regulations, the trial court found that this duty did not apply when an independent contractor is hired, and the employer has no control of the work place.[10]

The Idaho court has ruled that one who employs an independent contractor, and has no control over the manner in which the contractor performs, has no duty to comply with OSHA regulations relating to the work and hazards under the control of that independent contractor. *Arrington v. Arrington Bros. Const.*, 116 Idaho 887, 781 P.2d 224 (1989). In *Arrington*, the court ruled that while a violation of OSHA regulations may establish negligence *per se*, this is not true in every case; and the question of whether there is a duty to comply depends upon the circumstances. In *Arrington*, an employee of a framing subcontractor fell from a scaffold which was owned and erected by the general contractor. The scaffold did not have guard rails contrary to OSHA regulations. In ruling that the contractor owed a duty to the subcontractor's employee to install guard rails, the *Arrington* court relied on the test found in *Teal v. E. I. DuPont de Nemours and Co.*, 728 F.2d 799 (6th Cir. 1984) as persuasive authority, quoting as follows:

> (Congress) enacted the general duty clause (§ 654(a)(1)) to cover serious hazards that were not otherwise covered by specific regulations.... *The protection from exposure to serious hazards is the primary purpose of the general duty clause ... and every employer owes this duty regardless of whether it controls the work place, whether it is responsible for the hazard, or*

10. 29 U.S.C. § 654 provides that:
(a) Each employer—
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
(2) shall comply with occupational safety and health standards promulgated under this chapter.

*whether it has the best opportunity to abate the hazard. In contrast, Sec. 654(a)(2) is the specific duty provision. The class of employers who owe a duty to comply with the OSHA regulations is defined with reference to control of the work place and opportunity to comply with the OSHA regulations.* Accordingly, an employers' (sic) responsibilities under the Act depend upon which duty provisions the employer is accused of breaching. Similarly, the class of persons for whom each of these duty provisions was enacted must be determined with reference to the particular duty in dispute ... (116 Idaho at 890–91, 781 P.2d at 227–28, quoting *Teal,* 728 F.2d 799, 804 (6th Cir.1984)) (Emphasis added).

With the *Arrington–Teal* cases in mind, the trial court properly found that, while Simplot had a general duty to protect plaintiff from recognized hazards, there was no "viable evidence" to support the allegation that Simplot violated this duty. As to the specific duty found in § 654(a)(2), the court concluded that Simplot could not be held accountable for any duty relating to scaffolding on the site because the painting contractor was in complete charge of the painting and scaffolding work and had complete control of the work place with the opportunity and duty to comply with OSHA regulations relating to scaffolding.[11]

The trial court's ruling is reinforced by the subsequent decision of the Idaho Supreme Court in *Vickers v. Hanover Const. Co., Inc.,* 125 Idaho 832, 875 P.2d 929 (1994). In *Vickers,* defendant Boise Huntington, the owner of the project, contracted with defendant Hanover Construction Company, general contractor, for the construction of a large apartment complex. A framing subcontractor on the job, Pyramid Framing Contractors, contracted with Weightman, an independent contractor, for the construction of some of the framing on the project. Weightman, in turn, hired plaintiff Vickers to help frame some of the buildings. Vickers' estate was granted worker's compensation benefits through Pyramid's insurance coverage but sought additional tort damages from Huntington and Hanover upon the basis of OSHA citations. In affirming summary judgment issued in favor of Huntington and Hanover, the court relying on the *Arrington* decision, found that neither the project owner nor the general contractor owed a duty to Vickers under OSHA regulations because they had insufficient control of the work performed under the subcontract.[12]

We conclude that the issues raised by Kane have no merit, and there is no basis for him to recover against Simplot under Idaho law. The trial court properly granted summary judgment in favor of defendant, and that judgment is AFFIRMED.

---

11. In addition, the trial court found that any breach of duty regarding guard rails on the swing stage was not the proximate cause of plaintiff's injuries.

12. It appears that the subcontract between Hanover and Pyramid granted Pyramid exclusive control over all aspects of the means, manner, and method of performance of the subcontracted work. While Hanover retained the right to inspect the site, this limited degree of control was *not sufficient to create a duty under the specific duty provision* of 29 U.S.C. § 654(a)(2).